**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DONNA–LEE SPORTSWEAR CO., INC., et al., Respondents.**

**International Ladies' Garment Workers' Union, AFL–CIO, Intervenor.**

**No. 87–1139.**

United States Court of Appeals, First Circuit.

Heard Sept. 11, 1987.

Decided Dec. 29, 1987.

Jesse Gill with whom Rosemary M. Collyer, General Counsel, John E. Higgins, Jr., Deputy General Counsel, Robert E. Allen, Associate General Counsel, and Elliott Moore, Deputy Associate General Counsel, Washington, D.C., were on brief, for petitioner.

Donald J. Siegel, Boston, Mass., with whom Katherine D. Shea, Cambridge, Mass., and Segal, Roitman & Coleman, Boston, Mass., were on brief, for intervenor.

Michael P. DeFanti, Providence, R.I., with whom Robert P. Weintraub and Hinckley, Allen, Tobin & Silverstein, Boston, Mass., were on brief, for respondents.

Before CAMPBELL, Chief Judge, GARTH,* Senior Circuit Judge, and BOWNES, Circuit Judge.

GARTH, Circuit Judge.

This petition for enforcement presents the issue of whether a district court's prior determination that a binding labor agreement between two parties had not been formed, precludes the National Labor Relations Board from deciding at a later date that in fact a contract had been formed. We deny enforcement.

## I.

The purported agreement at issue in this case, was between Donna–Lee Sportswear Co., Inc. ("Donna–Lee") and Local 229, International Ladies Garment Workers Union ("Local 229"). It covered the time period from 1982 to 1985 and replaced an earlier agreement between the same parties which ran from 1979 to 1982.

In a complaint filed in the United States District Court for the District of Massachusetts, Ronald Alman, as trustee of various

* Of the Third Circuit, sitting by designation.

International Ladies Garment Workers Union ("ILGWU") benefit funds, brought an action against Donna–Lee seeking payments to the benefit funds allegedly owed by Donna–Lee under its 1982–1985 agreement with Local 229.[1] Donna–Lee filed a third party complaint against Local 229 and the same attorney which represented Alman ("Trustee") filed Local 229's answer to the third party complaint.[2]

While the federal court action was pending, the ILGWU and Local 229 filed an unfair labor practice charge with the NLRB, against Donna–Lee. The one sentence charge alleged that Donna–Lee had repudiated its agreement with Local 229. A complaint was issued and hearings were held before an Administrative Law Judge. After the administrative hearings, but before the ALJ had issued his decision, the district court held that no collective bargaining agreement existed between Local 229 and Donna–Lee for the period of 1982–1985. The district court's opinion stated:

> After consideration of the entire record, including testimony of the witnesses, the exhibits, and submissions of counsel, I conclude that the plaintiff has failed to satisfy its burden of proving that there was an enforceable contract between Local 229 and [Donna–Lee]....

App. at 18. Accordingly the district court held for Donna–Lee concluding that Donna–Lee was not obligated to make payments to the benefits funds.

Approximately six weeks later, the ALJ hearing the unfair labor charge brought by the Union against Donna–Lee, issued his opinion which held, contrary to the conclusion of the district court, that an enforceable contract had been formed. Donna–Lee was thereupon ordered to make its payments to the benefits funds. The decision of the ALJ was affirmed by the Board.

1. *Alman v. Donna–Lee Sportswear Co.,* (Civ. Action 84–3348–MA). The action was brought pursuant to sections 502(a)(3) and 515 of ERISA.

2. The third party complaint, which was originally brought against both Local 229 and the Joint Board of Cloak, Skirt and Dressmakers Unions (an affiliation of ILGWU locals), sought a declaratory judgment that no contract existed, or alternatively, that it was procured by fraudulent

## II.

Donna–Lee challenges the Board's ruling on three grounds: 1) that there was insufficient evidence to support the Board's ruling; 2) that the union filed its charges with the Board after the statute of limitations had run; and finally, 3) that the Board was collaterally estopped, by the district court judgment, from finding that a valid contract existed between Donna–Lee and Local 229. Because we decide that the Board was collaterally estopped from ruling, contrary to the district court, that a valid contract between Local 229 and Donna–Lee existed, we need not address Donna–Lee's other contentions.

The rules of collateral estoppel embody "the principle that one opportunity to litigate an issue fully and fairly is enough." *Pignons S.A. de Mecanique v. Polaroid Corp.,* 701 F.2d 1, 2 (1st Cir.1983) (*quoting Continental Can Co. v. Marshall,* 603 F.2d 590, 594 (7th Cir.1979)). Because the term estoppel encompasses myriad definitions which cut across a number of different areas of the law, we adopt here the somewhat more particularized term of "issue preclusion" to refer to situations where a later court is bound by a prior determination of an issue. See 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4416, at 136 (1981); Restatement of Judgments, 2d § 27. *See also Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.,* 575 F.2d 530, 535–36 (5th Cir.1978) (Rubin, J.); *Jackson Jordan, Inc. v. Plasser American Corp.,* 747 F.2d 1567, 1575 (Fed.Cir.1984).

The Restatement of Judgments explains the rule of issue preclusion as follows:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is

inducement. App. at 27–32. Donna Lee's brief represents that the third party complaint against the Joint Board was later dismissed. Br. of Respondents at 16. However, Local 229 remained in the lawsuit and as noted in text above, was represented by the same attorney who also represented the trustee. App. at 33–35.

essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Restatement of Judgments, 2d. § 27 at 250. *See also Griffin v. Burns*, 570 F.2d 1065, 1072 (1st Cir.1978); *Cardillo v. Zyla*, 486 F.2d 473, 475 (1st Cir.1973).

■ Thus there are five essential elements which must be present for the successful application of issue preclusion: 1. the determination (in this case a legal determination as to the existence of a contract) must be over an issue which was actually litigated in the first forum; 2. that determination must result in a valid and final judgment; 3. the determination must be essential to the judgment which is rendered by, and in, the first forum; 4. the issue before the second forum must be the same as the one in the first forum; and 5. the parties in the second action must be the same as those in the first.

Clearly, a number of the above elements are not in contention in this case. No party here can realistically dispute the fact that the issue of contract formation was not identical in both cases. *Cf. Penntech Papers, Inc. v. N.L.R.B.*, 706 F.2d 18, 23 (1st Cir.1983) (issue in district court action: "was parent alter-ego of subsidiary?" significantly differed from issue presented to the Board: "did parent and subsidiary constitute a single employer?"). The Trustee's district court action to require payments to the benefit funds was predicated on the existence of a valid contract between Donna–Lee and Local 229. Similarly, the charge that Donna–Lee engaged in unfair labor practices stemmed from the Union's contention that under its contract with Donna–Lee, Donna–Lee was obligated to make payments to the benefits funds. No question has been raised that the parties did not litigate extensively over this issue and that its resolution was not essential. Likewise, since the judgment against the Trustee was never appealed, neither the finality nor the validity of the district court's judgment, has been challenged.

Thus, of the five elements which we have identified as essential to issue preclusion, it is the fifth or last element—identity of the parties in both proceedings—that the Board claims is not satisfied. The Board argues that because it was not a party to the action before the district court in which the Trustee sued Donna–Lee, it cannot be bound by the district court's determination that no contract existed between Donna–Lee and Local 229.[3] In further support of this contention, the Board calls attention to the general policy that the government—the NLRB here—should not be precluded from relitigating issues which have important public interests. It is this issue of identity of the parties to which we now turn.

### III.

The traditional exception to the rule that issue preclusion affects only the parties to the initial litigation has been the understanding that the privies of those parties are also bound. *See e.g. Southern Pacific Railroad v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897); *Griffin v. Burns*, 570 F.2d 1065, 1070–72 (1st Cir.1978).[4] Numerous courts have recognized that while "privity is an elusive concept," *see Griffin*, 570 F.2d at 1071, the privity which can lead to issue preclusion is

---

**3.** In the instant enforcement action, charges were brought by Local 229 and the ILGWU against Donna–Lee. We can not perceive, and at oral argument counsel could not provide, any way to distinguish between the interests of Local 229 and the ILGWU itself in this case.

**4.** We note in passing that the Supreme Court has endorsed the recent trend in the law allowing, in certain circumstances, issue preclusion to be asserted *by* parties who were not present in the initial lawsuit. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (defendant in stockholders class action suit is precluded from relitigating issues decided against it in an earlier action brought by SEC); *Blonder–Tongue Labs, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (invalidity of patent determined in prior lawsuit may preclude assertion of patent validity in later infringement suit brought against a different defendant). The present case presents a somewhat different posture, as the Board is arguing that issue preclusion cannot be asserted *against* it as a non-party in the previous action.

that relationship between two parties which is sufficiently close so as to bind them both to an initial determination, at which only one of them was present. *First Alabama Bank v. Parsons Steel, Inc.*, 747 F.2d 1367, 1378 (11th Cir.1984) ("A finding of privity is no more than a finding that all of the facts and circumstances justify a conclusion that non-party preclusion is proper.") *rev'd on other grounds*, 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986); *Gill & Duffus Services, Inc. v. Nural Islam*, 675 F.2d 404, 405 (D.C.Cir.1982) ("The term 'privity' signifies that the relationship between two or more persons is such that a judgment involving one of them may justly be conclusive upon the others, although those others were not party to the lawsuit."); *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106, 1109 (6th Cir.1981), *cert. denied*, 456 U.S. 906, 102 S.Ct. 1752, 72 L.Ed.2d 162 (1982); *Bruszewski v. United States*, 181 F.2d 419, 423 (3d Cir.) (Goodrich, J., concurring) ("It [privity] is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata."), *cert. denied*, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950).

■ In the present case, the relationship and legal interests of the Board and Local 229 are that closely identified, that it would be incongruous not to bind them both by the district court's holding that no contract existed. A number of factors require this conclusion.

First, the Board (or more precisely the General Counsel) has no power to investigate alleged unfair labor practices until a formal charge is filed. Here that charge was filed by the unions, whose interests were fully and completely adjudicated by the district court. Thus the Board's presence in this dispute derives from parties that are clearly bound by the district court's judgment.

Second, in the hearing before the ALJ, the General Counsel and counsel for the unions asserted the exact same interests and positions, each conducting largely duplicative examinations of the witnesses.

Third, the single charge filed with the NLRB claimed that Donna–Lee had repudiated its agreement with Local 229. App. at 484. Thus, the existence of a contract between Donna–Lee and Local 229 was the essence of the unfair labor practice charge.

Fourth, the complaint filed before the Board enumerated three specific unfair practices: that Donna–Lee had failed to make its contributions to the benefits funds; that it had notified contractors that it had no union contract; and that it informed a union agent that it had no contract with Local 229 and requested that he leave. Each of these charges is founded upon and depends upon the existence of a valid contract, the very issue expressly decided by the district court.

Fifth, the only significant relief ordered by the Board were the payments to the benefits funds by Donna–Lee, relief expressly denied by the district court which found that no such contractual obligation existed.

Lastly, no broad policy question is implicated in the determination that no contract exists. Nor is any precedent established by that determination which would have wide ranging effect on labor relations.

We are satisfied, that taking these considerations into account, the interests of the Board cannot be disassociated from interests of Local 229—indeed, in this setting they are virtually identical. This being so, the elements of issue preclusion which we have earlier set out, have been met. Thus because there is no lack of privity between the Board and Local 229 we reject the Board's argument that its absence as a named party in the district court action, prevents the application of issue preclusion in the instant proceeding.

### IV.

#### A.

We are not the first Court of Appeals to address issue preclusion in the context of an unfair labor practice proceeding where a district court had earlier held that no collective bargaining agreement had been effected. In *N.L.R.B. v. Heyman*, 541 F.2d 796

(9th Cir.1976), the district court granted summary judgment for the employer (Heyman) and rescinded Heyman's collective bargaining agreement with the union. It did so, after holding among other things, that the union did not represent a majority of Heyman's employees when the agreement was signed. Thereafter, the union filed unfair labor practice charges when Heyman repudiated the agreement, refused to negotiate, and ceased payments to the union's welfare and pension funds. The Board found that Heyman had engaged in unfair labor practices and sought enforcement of its order upholding the union's charges. The Ninth Circuit characterized the issue before it as follows:

> The crux of the matter is what effect the Board must give a United States District Court judgment which is antithetical to the Board's subsequent determination regarding the validity of a collective bargaining agreement.

*Id.* at 797. In denying enforcement of the Board's order the court held that the Board must give effect to the district court's judgment, noting that:

> The Board was faced with the same parties; essentially the same contract issue, albeit implicitly, that existed in the district court; the same Union arguments; and the presence of a judicially decreed rescission. To fail to give any effect to the district court's judgment would here render [the district court's jurisdiction] nugatory and defeat intentions of Congress that alternative forums be available and that contract violations be left "to the usual processes of the law," *Charles Dowd Box Co. v. Courtney,* 368

U.S. 502, 513 [82 S.Ct. 519, 526, 7 L.Ed. 2d 483] (1962).

*Id.* at 800 (footnote omitted).[5]

The Ninth Circuit recognized that in certain settings a Board determination may take precedence over other proceedings.[6] However, in giving effect to the district court's action which had rescinded the collective bargaining agreement, the court went on to hold that when a district court is faced with the question of the contract's existence, the Board's authority "... does not supplant the jurisdiction of the courts." *Heyman,* 541 F.2d at 799. *But see Bay Area Sealers and Auto, Marine & Specialty Painters Union Local No. 1176,* 251 N.L.R.B. 89 (1980), (criticizing *Heyman* ), *enf'd sub nom Rayner v. N.L.R.B.,* 665 F.2d 970 (9th Cir.1982) (no discussion or holding with respect to issue preclusion).

We also note that it is not unusual for a federal court to rule on the issue of whether a collective bargaining agreement is a valid contract. In a somewhat related area, this court has acknowledged that generally it is the function of the courts to determine if the parties have entered into a contract, while it is for an arbitrator to construe the terms of the agreement once such an agreement has been effected. *International Brotherhood of Electrical Workers, Local 1228, AFL–CIO v. Freedom WLNE–TV, Inc.,* 760 F.2d 8, 10 (1st Cir.1985); *accord Moldavan v. Great Atlantic and Pacific Tea Co., Inc.,* 790 F.2d 894, 897 (3d Cir.1986) (Gibbons, J.) ("[T]he existence of the contract is ordinarily a matter for the courts.").

To be sure, an arbitrator's role is not on all fours with the Board's. While an arbitrator's jurisdiction depends on the exist-

**5.** In *N.L.R.B. v. Heyman,* 541 F.2d 796 (9th Cir. 1976), the parties in the earlier district court action brought pursuant to § 301 of the Labor Management Relations Act were Heyman and the Union. In that case, just as in the instant proceeding, neither the Board nor its General Counsel were named parties in the district court action.

**6.** In this Circuit, we too recognize that in interpretations of collective bargaining agreements, deference is paid to the Board in determining whether particular conduct amounts to an unfair labor practice. *New Bedford Fishermen's*

*Welfare Fund v. Baltic Enterprises,* 813 F.2d 503 (1st Cir.1987). *New Bedford,* of course, did not involve the threshold question, with which we are confronted here, of whether a contract had been entered into by the employer and the union. Rather, *New Bedford* held that when an acknowledged collective bargaining agreement had expired, and the Board had yet to decide that impasse had occurred, the district court is without jurisdiction to order benefit fund payments which may have accrued after the expiration date of the contract.

ence of a collective bargaining agreement, the NLRB has jurisdiction whether or not an agreement exists. Thus it may be, although we do not decide, that "the validity of a collective bargaining agreement is a question which both the district court and Labor Board may have concurrent jurisdiction to decide" and that "facts necessarily decided in either forum should be given at least some collateral estoppel effect in subsequent proceedings in the other forum." *NLRB v. Heyman,* 541 F.2d at 802 (Kennedy, J., concurring).

### B.

■ In arguing that this court should not follow the Ninth Circuit in *Heyman,* the Board calls our attention to the general policy that the Government should not be precluded from litigating issues of public importance which may have been decided in an earlier action between private parties. *United States v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) (petition for naturalization); *City of Richmond v. United States,* 422 U.S. 358, 373 n. 6, 95 S.Ct. 2296, 2305 n. 6, 45 L.Ed.2d 245 (1975) (voting discrimination); *Donovan v. Cunningham,* 716 F.2d 1455, 1462–1463 (5th Cir.1983) (settlement of private ERISA action does not preclude Secretary of Labor from pursuing additional relief), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984).

But, whatever the parameters of such a doctrine may be, we are satisfied that the rule against applying the principles of issue preclusion against the Government is not absolute. To the contrary, Supreme Court precedents instruct that the defensive use of issue preclusion against the Government is available to a party which prevailed against the Government in a prior action.[7] *United States v. Stauffer Chemical Co.,*

464 U.S. 165, 170, 104 S.Ct. 575, 578, 78 L.Ed.2d 388 (1984); *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed. 2d 210 (1979). Indeed, in *Montana,* the Court allowed issue preclusion to be asserted against the Government even though the Government was not a party of record in the initial case.[8]

Justifications have been advanced for restricting the use of issue preclusion against the Government. First, there is a geographic breadth to Government litigation that is not found in private disputes. Second, the issues litigated by the Government are far more numerous and of a far different nature than those litigated by even the most litigious private entity. *U.S. v. Mendoza,* 464 U.S. at 159, 104 S.Ct. at 572. In *Mendoza,* Justice (now Chief Justice) Rehnquist, writing for a unanimous court, emphasized that Government litigation frequently involves legal questions of substantial public importance and questions of constitutional dimension which may arise only in the context of litigation to which the Government is a party. Moreover, the Court stressed that allowing non-mutual collateral estoppel against the government

> would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue. Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari.... Indeed, if nonmutual estoppel were routinely applied against the Government, this Court would have to revise its practice of waiting for a conflict to develop before granting the Government's petitions for certiorari.

---

7. Defensive issue preclusion refers to the situation where a defendant, who prevailed on a particular issue in the initial action, seeks to prevent relitigation of that issue in a later action. *See* 18 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 4464, at 573–576.

8. In *Montana* a contractor brought the first action against the State of Montana challenging the State's gross receipts tax in state court. The United States directed and financed the state court action. The Supreme Court held that in the second action, which was brought by the United States against Montana in federal court, the United States was bound by the initial state court determination that the tax was valid.

*Id.* at 160,[9] 104 S.Ct. at 572.

None of these considerations obtain in the present case. While we recognize that vindication of the labor policies enacted into law by Congress generally rests with the Board, and that labor relations between unions and employers necessarily involve some public interest, in this case it is the private interest of the disputants that predominates. None of the overriding concerns foreseen in *Mendoza* are implicated in the threshold issue of whether an agreement between two parties has ever been consummated.

Thus, although it cannot be gainsaid but that the National Labor Relations Act protects a blend of public and private interests, *Auto Workers v. Scofield*, 382 U.S. 205, 220, 86 S.Ct. 373, 382–83, 15 L.Ed.2d 272 (1965), here it is primarily the private interests of two private parties, which are in dispute: the same interests which were fully and appropriately adjudicated by the district court. In such a case where the Board has sought to determine the existence or non-existence of what is essentially a private agreement, blind adherence to the doctrine that the Government is generally exempted from issue preclusion is not compelled. *See generally* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4458, at 512–513. Accordingly, we are not persuaded that merely because the NLRB is a government agency,

that in the current context, we should permit the Board to ignore the district court's judgment.[10]

## V.

■ The intervenor ILGWU suggests that we uphold the Board's order on an alternative ground. The ILGWU argues that under *NLRB v. Katz*, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962), Donna–Lee committed an unfair labor practice by changing the conditions of employment before an "impasse" had been reached in negotiations on the new contract.[11]

However, we have no indication that the Board itself would espouse such a theory.[12] Without knowing the Board's position on the matter, we decline to rule on how the impasse rule would apply to this situation. First, although the ILGWU claims otherwise, the ALJ might well have wanted to find additional facts that were relevant to whether Donna–Lee should have been held to the impasse rule. *Cf. New Bedford Fisherman's Welfare Fund v. Baltic Enterprises, Inc.*, 813 F.2d 503, 505 (1st Cir. 1987) ("[T]he factfinder must consider a variety of factors such as the bargaining history, the importance of the issue or issues on which the parties disagree, the number of meetings between the parties, the length of the meetings, and the amount of time elapsed since negotiations began.

9. *See generally* Estreicher & Sexton, *A Managerial Theory of the Supreme Court's Responsibilities: An Empirical Study*, 59 N.Y.U.L.Rev. 681 (1984) (discussing the merits of the "percolation" of issues in the lower federal courts before reaching the Supreme Court for final adjudication).

10. After argument, counsel for the ILGWU submitted a letter with the recent decision by this court in *Lynch v. Merrell–National Laboratories*, 83 F.2d 1190 (1st Cir.1987). Nothing in counsel's letter, or the *Lynch* case itself, which involved the rights of a party who had opted out of a class action suit, changes our analysis of the issues in this case.

11. Although the Board's brief did not make this argument or seek this relief, at oral argument, counsel for the Board suggested that we adopt the intervenor's argument. We decline to do so. An oral request by a single attorney cannot substitute for an explicit finding by the Board that, even in the absence of a contract, Donna–

Lee has committed an unfair labor practice. *See International Union (UAW) v. NLRB*, 459 F.2d 1329, 1344 (D.C.Cir.1972) ("We note, however, that in its brief before this court counsel for the Board has offered some additional justifications for [its decision] which do not appear in the Board's opinion. Under well-established principles of administrative law, we would be justified in ignoring these new reasons altogether.").

12. The ILGWU claims that the record supports its contention that the ALJ would have found an unfair labor practice even if Donna–Lee were not bound by the agreement. However, the language it cites from the hearing before the ALJ is ambiguous at best. Moreover, neither the ALJ's decision nor the Board's decision and order mention an alternative ground for finding that Donna–Lee had committed unfair labor practices.

The outcome often turns on slight factual differences." (citation omitted)). Second, in the absence of a collective bargaining agreement, the Board "because of its special expertise, ... is particularly qualified to decide such a question." *Id.* In fact, a district court would have no jurisdiction to consider the question. Thus, without the benefit of a ruling from the Board, we decline to address the merits of the ILG-WU's contention that we should enforce the Board's order based on an alternative ground.

## VI.

We will deny enforcement of the Board's order dated September 30, 1986.