**CORONET FOODS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 91–1561.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 24, 1992.

Decided Jan. 5, 1993.

Rehearing Denied Feb. 3, 1993.

---

Arthur B. Muchin, with whom Mark L. Juster, Chicago, IL, was on the brief, for petitioner.

Frederick C. Havard, Atty., N.L.R.B., with whom Jerry M. Hunter, Gen. Counsel, and Aileen A. Armstrong, Deputy Associate Gen. Counsel, Washington, DC, were on the brief, for respondent.

Before: EDWARDS, RUTH BADER GINSBURG, and WILLIAMS, Circuit Judges.

Opinion for the court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

## I. INTRODUCTION

Coronet is a wholesale food processing company that unlawfully closed its trucking department[1] in retaliation for protected union organizing. As a remedy, the National Labor Relations Board (NLRB or Board) ordered restoration of the department and rejected Coronet's financial hardship plea. In this proceeding for judicial review of the Board's order, Coronet attacks the restoration remedy as inappropriate. The company relies primarily on a federal district court decision in an NLRB-initiated proceeding for temporary relief pursuant to section 10(j) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(j); in that auxiliary proceeding, the court declined to order immediate reopening of the closed department.

We hold that, in ordering Coronet to restore the trucking department, the Board reasonably exercised its broad discretion to remedy unfair labor practices. Accordingly, we deny the petition for review and enforce the Board's order.

## II. BACKGROUND

In December 1987, Teamsters Local 697 sought to unionize Coronet's trucking de-

---

1. The trucking department had been responsible for distributing the processed food to retailers.

partment. Despite threats by Coronet management that unionization would lead to the closing of the trucking department, the union successfully organized the workers and was eventually certified in February 1989. In March 1989, Coronet announced that it would close its trucking department (which it did in April) and contract out its distribution business.

Soon after, an NLRB Regional Director issued an unfair labor practices complaint against Coronet. The complaint charged, among other things, that Coronet had violated section 8 of the NLRA, 29 U.S.C. § 158, by closing the trucking department in retaliation for union organizing. To remedy the violation, the Regional Director sought a Board order directing Coronet to restore the trucking department and reinstate the laid off employees. Seeking interim relief, the Regional Director applied to a federal district court for a temporary injunction pending the Board's final disposition.[2]

The unfair labor practices hearing before the Administrative Law Judge (ALJ) occurred in July 1989, prior to the hearing in district court. Coronet introduced at that hearing no evidence impugning the appropriateness of the unfair labor practices remedy sought by the Director. The hearing in federal district court on the application for temporary relief followed on the heels of the ALJ's hearing. In court, Coronet did submit evidence showing the financial hardship it would face if it were forced immediately to restore the trucking department.

In December 1989, the federal district court issued its decision—three months before the ALJ issued his. The court found "reasonable cause" to believe the closing was retaliatory, but denied a temporary restoration order as unnecessary and inappropriate. *See Zawatski v. Coronet Foods, Inc.*, No. 89–0042–W(K) (N.D.W.V. Dec. 27, 1989). Specifically, the court concluded that an interim order to reestablish

the trucking department "would create such a financial hardship on [Coronet] that it would jeopardize the existence of the business and the jobs of the other employees remaining on the payroll." *Id.* at 9.[3] The court further determined, however, that "the [Regional Director] is entitled to at least keep the [trucking] department in status quo so that [he] will be in a better position to enforce any final order issued by the Board or an appropriate court." *Id.* Accordingly, the court directed Coronet to refrain from, among other things, "selling ... or otherwise disposing of any of the vehicles, equipment, or assets used in the operation of ... [the] department." *Id.*

Coronet promptly submitted a copy of the district court opinion to the ALJ, who had not yet ruled on the unfair labor practices complaint. Close to three months later, in March 1990, the ALJ issued his decision. He found that Coronet unlawfully closed its trucking department, and he recommended that the company "be ordered to restore the status quo ante by reopening that department and reinstating the employees." *Coronet Foods, Inc.*, 305 N.L.R.B. No. 11, at 23 (1991) (ALJ decision). Status quo ante relief, the ALJ observed, "is in accord with established Board policy that in cases involving discriminatory conduct the wrongdoer should bear the hardships of the unlawful action, rather than the innocent victims." *Id.* (footnote omitted). "There is no evidence in the record," the ALJ added, "that resumption of [Coronet's] transportation operations would cause it undue hardship." *Id.* at 23–24 (footnote omitted). In a footnote, the ALJ referred to the district court's decision ordering Coronet to maintain the status quo but declining, on grounds of financial hardship, to order *pendente lite* restoration of the trucking department. "The basis for [the financial hardship] finding is not stated," the ALJ said, "and there is nothing in this record to support such a conclusion." *Id.* at 24 n. 42.

---

**2.** Section 10(j) of the NLRA, 29 U.S.C. § 160(j), provides for temporary injunction petitions of this sort.

**3.** The district court's opinion did not state the evidence from which the court concluded that financial hardship made an immediate restoration order "not just and proper." *Id.*

Filing exceptions with the Board, Coronet asserted that the restoration remedy was inappropriate. In support, Coronet relied on the district court's unelaborated conclusion that restoring the trucking department pending the Board's final disposition would threaten the company's existence. Coronet did not recount the evidence supporting the court's conclusion. Nor did Coronet petition the Board—as allowed by NLRB regulations—to reopen the record so that it could introduce evidence showing why restoration should not be ordered.

The Board's decision, rendered in September 1991, affirmed the ALJ's decision in most respects and adopted the recommended remedial order. In specific agreement with the ALJ, the Board noted that it found in the record of the NLRB proceedings "no evidence that the restoration [of the trucking department] would be unduly burdensome on the Respondent." *Coronet Foods, Inc.*, 305 N.L.R.B. No. 11, at 3 n. 6 (1991) (Board decision) (citation omitted). In a final statement regarding the restoration order, the Board observed that "evidence concerning the appropriateness of the remedy could also be submitted at the compliance stage, so long as it is shown that the evidence was unavailable at the time of the unfair labor practice." *Id.* (citation omitted).

Petitioning for this court's review, Coronet argues, first, that the district court's finding of financial hardship precluded ("collaterally estopped") the ALJ and the Board from ordering restoration. Alternately, Coronet asserts that it was an abuse of discretion for the ALJ and the Board peremptorily to reject Coronet's undue burden plea in face of clear notice that supporting evidence existed—enough evidence to have impressed a federal court. In Coronet's view, the ALJ and the Board should have, on their own initiative, inquired into that evidence and based their decisions on it.

### III. DISPOSITION

■ *A. Issue Preclusion.* Coronet's preclusion argument [4] fails for a most basic reason: the critical issue before the district court was not the same as the one ultimately before the Board. *See Gould v. Mossinghoff,* 711 F.2d 396, 398–99 (D.C.Cir.1983) ("Fundamental to any application of [issue preclusion] is that the issue or issues previously determined be [the same as] the issue or issues presently barred.") (citation omitted); *see generally* RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982). The pleas before the court in the section 10(j) proceeding and before the ALJ and Board in the unfair labor practices adjudication may have been called by the same *name*—"undue financial hardship" or the like—but the issues themselves were substantively different.

Undue hardship figures in a temporary injunction proceeding as part and parcel of an overall prudential judgment concerning the most appropriate—the most "just and proper"—interim relief. Such a judgment often must be made in the face of uncertainty about how the Board will eventually resolve the unfair labor practice issues; given that uncertainty, the decisionmaker may deem it best simply to hold the situation in tow so as to enable the Board effectively to implement the final decision it reaches. At the unfair labor practice adjudication stage, on the other hand, the decisionmaker addresses the remedy only after a definitive ruling that the NLRA has been violated. At that point, the hardship assessment must be made based on conditions as they then exist and with full weight given to the fact that the respondent's unlawful conduct has been solidly established. It is thus not surprising that the district court and the Board ruled differently on Coronet's "undue hardship" plea—with the court taking the more

---

4. We reject the Board's argument that Coronet did not raise issue preclusion before the Board and so did not preserve that plea for our review. It was enough that Coronet (1) informed the Board in its brief that "[a]n evidentiary hearing [on the undue hardship issue] was held [in the district court], whereupon the matter was fully litigated" and (2) presented to the Board excerpts from the district court's decision on the undue burden matter.

guarded and tentative approach.[5]

Even if we were to regard the "hardship" issue before the court and Board as essentially the same, however, we would have cause to doubt whether, under the regime of the NLRA, a district court finding in a section 10(j) auxiliary proceeding would later bind the NLRB when ruling, definitively, on the unfair labor practice charge and the remedy appropriate thereto. As counsel for Coronet acknowledged at oral argument, case law under the NLRA appears to include no instance of the Board having been bound in the manner Coronet urges. We note, in this regard, that section 10(f) of the NLRA, 29 U.S.C. § 160(f), anticipates court review, not preview, of the Board's first instance decisions as primary adjudicator of unfair labor practices; the Act instructs courts that Board adjudications, if supported by substantial evidence, are conclusive.

■ *B. Abuse of Discretion.* Coronet, we stress, bears the burden of production and persuasion on the hardship defense it asserts. *See, e.g., Teamsters Local Union No. 171 v. NLRB,* 863 F.2d 946, 957–58 (D.C.Cir.1988) (where a closing has been found retaliatory, the Board generally may order restoration unless *"the Company ... [can] show* that compliance with the order is unduly economically burdensome") (emphasis added), *cert. denied,* 490 U.S. 1065, 109 S.Ct. 2063, 104 L.Ed.2d 628 (1989). Coronet utterly failed to carry that burden. Even if Coronet could be excused for failing initially to produce hardship evidence before the ALJ, the ALJ's decision alerted Coronet to the need for proof in the administrative record. Nevertheless, the company failed to petition the Board to reopen the record. Moreover, as the Board observed, Coronet still has an opportunity to show current hardship as cause for modification of the remedy at the compliance

stage. In short, it was no abuse of discretion for the Board to decline to assume itself a proof burden properly assigned to the company, and Coronet is not without means to achieve relief if its hardship plea remains genuine.

For the reasons stated, we deny Coronet's petition for review and enforce the Board's order in full.

*It is so ordered.*

---

5. The district court expressly acknowledged the need to preserve the feasibility of "any final order" and—to that end—ordered Coronet to refrain from disposing of the trucking department's assets. *See supra* p. 1286.

Coronet cites as precedent in support of its "same issue" argument *NLRB v. Donna–Lee Sportswear Co.,* 836 F.2d 31 (1st Cir.1987). The

two cases, however, are not comparable. The district court finding in *Donna–Lee Sportswear* was made in an independent, *definitive* ERISA action, *see id.* at 33 n. 1, not in an auxiliary proceeding for interim relief. In substance as well as in name, the issue of "contract formation" in *Donna–Lee Sportswear* was identical in court and Board cases. *See id.* at 34.