Veale v. Marlborough                    CV-92-355-SD   08/30/95
            UNITED STATES DISTRICT COURT FOR THE

                  DISTRICT OF NEW HAMPSHIRE


Scott W. Veale;
David T. Veale

     v.                                 Civil No. 92-355-SD

Town of Marlborough


                         O R D E R


     In this civil rights action brought pursuant to 42 U.S.C. §
1983, plaintiffs Scott and David Veale allege that the Town of
Marlborough (New Hampshire) violated their constitutional right
to vote.[1]  Presently before the court is defendant's supplemental
motion for summary judgment, to which plaintiffs object.


                        Background

     In 1990 Town of Marlborough officials refused to place
plaintiffs' names on the town's voter checklist due to
plaintiffs' purported failure to provide the town with proper
proof of residency.

     Lawrence W. Robinson has served as a supervisor of

_____

     [1]Plaintiffs' original complaint contained numerous other
claims which, as detailed in this court's order of April 11, 1994
(document 38), have been dismissed or disposed of by summary
judgment.

Marlborough's voter checklist since 1984.  Affidavit of Lawrence W. Robinson ¶ 1 (attached to Defendant's Motion as Exhibit C). Robinson explains in his affidavit that "[a]t the end of 1989, pursuant to New Hampshire Revised Statute Annotated ch. 654:38, we purged the voter checklist and mailed letters of verification to correct errors in the previous list."  Id. ¶ 12.  New voter registration cards were sent along with this letter, and voters were informed that the street address on these cards "must show street number.  Post office box numbers are not acceptable."  See Letter to Marlborough Voters (attached to Robinson Affidavit as Exhibit 2).

Robinson states that,

> 13.  In October 1990, David and Scott Veale attempted to re-register to vote in the Town of Marlborough.
> 14.  Upon review of the registration cards, the Supervisors of the Checklist voted to reject their applications since they did not identify acceptable addresses in the Town as their residences.
> 15.  At first, they gave "P.O. Box 71" as their official addresses.  We explained that post office box numbers were not acceptable.
> 16.  Then David and Scott Veale represented that they lived on "Bassett Court."  I knew, as did virtually everyone else in Town, that David and Scott Veale had moved their mobile home to property on Bassett Court that they did not own, and that the Superior Court had found that they had no right to be there.
> 17.  Ultimately, the Supervisors voted to reject David and Scott Veale's applications to vote in the Town in 1990.

2

Robinson Affidavit ¶¶ 13-17. The Veales were notified of this decision by a letter dated November 2, 1990, which stated that "[t]he reason for this rejection is that you do not meet the domicile requirement." Letter to David T. Veale (attached to Robinson Affidavit as Exhibit 3).

On November 5, 1990, plaintiffs filed a complaint for immediate injunctive relief in this court seeking to have the court order Marlborough to place their names on its voter checklist so they could vote in the November 6 election. Following a hearing on the matter, the magistrate judge found that plaintiffs' domicile for voting purposes was Marlborough and ordered defendant to place plaintiffs' names on the voter checklist and allow them to vote.[2] Marlborough complied with the court's order, and the Veales voted on November 6 in Marlborough. Robinson states that the Veales have remained on Marlborough's voter checklist "continuously since that time even though we know that they do not reside in the Town of Marlborough." Robinson

[2] Plaintiffs contend that defendant is collaterally estopped from relitigating the question of where their domicile is for voting purposes due to this court's decision in Veale v. Town of Marlborough, Civ. No. 90-502-S (D.N.H. Nov. 6, 1990). However, this court has previously determined that since said decision only involved a determination of plaintiffs' likelihood of success on the merits of their right-to-vote claim, the issues litigated there "'do not form the basis for collateral estoppel.'" Order of Apr. 11, 1994 (document 38) (quoting Kuzinich v. County of Santa Clara, 689 F.2d 1345, 1350-51 (9th Cir. 1982)).

Affidavit ¶ 19.

In 1992 plaintiffs initiated the present action, in which they contend that Marlborough's refusal to place their names on the voter checklist was a violation of their constitutional right to vote.  Plaintiffs seek damages from the town for this alleged civil rights violation.

## Discussion

### 1.  Summary Judgment Standard

Under Rule 56(c), Fed. R. Civ. P., summary judgment is appropriate if the evidence before the court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The summary judgment process

> involves shifting burdens between the moving and the nonmoving parties.  Initially, the onus falls upon the moving party to aver "'an absence of evidence to support the nonmoving party's case.'" Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  Once the moving party satisfies this requirement, the pendulum swings back to the nonmoving party, who must oppose the motion by presenting facts that show that there is a "genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)). . . .

LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir.

4

1993), cert. denied, ___ U.S. ___, 114 S. Ct. 1398 (1994).

"Essentially, Rule 56(c) mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Mottolo v. Fireman's Fund Ins. Co., 43 F.3d 723, 725 (1st Cir. 1995) (quoting Celotex Corp., supra, 477 U.S. at 322). When the nonmoving party bears the burden of proof at trial and fails to make such a showing, "there can no longer be a genuine issue as to any material fact: the failure of proof as to an essential element necessarily renders all other facts immaterial, and the moving party is entitled to judgment as a matter of law." Smith v. Stratus Computer, Inc., 40 F.3d 11, 12 (1st Cir. 1994) (citing Celotex Corp., supra, 477 U.S. at 322-23), cert. denied, ___ U.S. ___, 115 S. Ct. 1958 (1995).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the nonmoving party's favor. Anderson, supra, 477 U.S. at 255; Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1159 (1st Cir. 1994)

2. Defendant's Motion

The Town of Marlborough admits that town officials refused

5

to place plaintiffs' names on the voter checklist in 1990. However, defendant explains that this decision was based on plaintiffs' failure to provide town officials with proper proof of residency. Defendant moves for summary judgment on the ground that its actions did not violate plaintiffs' constitutional right to vote.

### a. The Right to Vote

It is well established that the right to vote is a fundamental right. E.g., Burdick v. Takushi, 504 U.S. 428, 433 (1992) ("It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'" (quoting Illinois Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 184 (1979))); Reynolds v. Sims, 377 U.S. 533, 561-62 (1964) ("the right of suffrage is a fundamental matter in a free and democratic society").

However, it is equally well established that "the States have the power to impose reasonable citizenship, age, and residency requirements on the availability of the ballot." Kramer v. Union Free Sch. Dist., 395 U.S. 621, 625 (1969) (citations omitted). Indeed, as the Supreme Court has wisely observed,

Common sense, as well as constitutional law,

6

compels the conclusion that government must play an active role in structuring elections; "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes."

Burdick, supra, 504 U.S. at 433 (quoting Storer v. Brown, 415 U.S. 724, 730 (1974)).


b.  New Hampshire's Regulation of the Right to Vote

The right to vote in New Hampshire is restricted by New Hampshire Revised Statutes Annotated (RSA) 654:1, I (1986), which provides in part,

> Every inhabitant of the state, having a fixed and permanent established domicile, being a citizen of the United States, of the age provided for in Article 11 of Part First of the Constitution of New Hampshire, shall have a right at any meeting or election, to vote in the town, ward, or unincorporated place in which he is domiciled.

The statute further provides,

> The determinant of one's domicile is a question of factual physical presence incorporating an intention to reside for an indefinite period.  This domicile is the voter's residence to which, upon temporary absence, he has the intention of returning. This domicile is that place in which he dwells on a continuing basis for a significant portion of each year.

Plaintiffs do not challenge the constitutionality of the

7

domicile requirements set forth in RSA 654:1, I.  Instead, plaintiffs claim that the Town of Marlborough violated their constitutional right to vote in November 1990 when town officials refused to allow them to register to vote.

### c.  Defendant's Restriction of Plaintiffs' Right to Vote

Under New Hampshire law, the supervisors of a town's voter checklist are entrusted with maintaining and correcting that list.  See generally RSA 654:1 to :44 (1986 & Supp. 1994).  In carrying out this responsibility, the supervisors have the authority to determine whether an applicant is qualified to vote in the town.  See RSA 654:11 (when the supervisors receive an applicant's voter registration card, "the supervisors of the checklist shall cause his name to be added to the checklist, unless they are of the opinion that the applicant is not qualified to vote in the city or town under RSA 654:1 through 654:6").

When plaintiffs attempted to register to vote in Marlborough, they had the burden of establishing that they were qualified applicants; that is, plaintiffs were required to prove they were (1) United States citizens, (2) 18 years of age or older, and (3) domiciled in Marlborough.  See RSA 654:1, I.

As set forth at pages 2-3 of this order, the supervisors of

8

Marlborough's voter checklist voted to reject plaintiffs' 1990 applications to vote in the town due to plaintiffs' failure to provide proper proof that Marlborough was their domicile.

The voter registration cards submitted by the Veales after being informed that a post office box number was not an adequate address indicated that their address was "Bassett Court". The Veales did move their mobile home onto certain property located at Bassett Court in November of 1989. However, the Cheshire County Superior Court subsequently found that the Veales' placement of their mobile home on the Bassett Court property violated Marlborough's zoning ordinance and awarded the town "the sum of $100.00 per day for each day that plaintiffs' mobile home was located on the property in question until it was removed by the town." Veale v. Town of Marlborough, No. 89-E-144, slip op. at 3 (Cheshire County Super. Ct. Mar. 24, 1990) (attached to Robinson Affidavit as Exhibit 4).

In addition, a year earlier the Veales were embroiled in another lawsuit with the Town of Marlborough over the town's refusal to accept their applications to register their motor vehicles in September of 1988. In that action, the Cheshire County Superior Court found that

> [a]lthough [the Veales] assert that
> Marlborough is their domicile, the plaintiffs
> have no home in that town which they own,

> rent, or otherwise live in. The only place which is in fact plaintiffs' home is their apartment on Cross Street in Keene, which plaintiffs have been renting since November, 1987. Plaintiffs' motivation for wanting to register their vehicles through Marlborough is not that plaintiffs' home is there but their perception that, unless they demonstrate that Marlborough is their domicile, plaintiffs will somehow prejudice their position in the real estate disputes. Plaintiffs would readily register their vehicles in Keene if they were confident that they would not thereby jeopardize their real estate claims.

Veale v. Town of Marlborough, No. 88-E-108, slip op. at 4 (Cheshire County Super. Ct. Feb. 3, 1989) (attached to Defendant's Motion as Exhibit D). The court went on to hold that plaintiffs have resided in Keene for the purposes of RSA 261:148[3] since November 1987 and that the town's refusal to accept their motor vehicle registration applications was proper.[4] Id. at 5-6.

---

[3]RSA 261:148 (1993) requires a New Hampshire resident to obtain a permit for registration of his motor vehicle "from the city or town wherein he resides."

[4]Defendant argues that, as a result of the Superior Court's order of February 3, 1989, plaintiffs are collaterally estopped from relitigating in this case the issue of where they resided. "'When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" NLRB v. Donna-Lee Sportswear Co., 836 F.2d 31, 33-34 (1st Cir. 1987) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27, at 250 (1982)). The issue of where plaintiffs were residing when they sought to register to vote in Marlborough is relevant to the issue of whether Marlborough was their domicile at that

10

Plaintiffs argue that "it cannot be said that [they] do not continue to have a future intent to permanently live on their property in Marlborough which is the only domicile in this State they intend to ever have."  Plaintiffs' Memorandum at 7. Plaintiffs further argue that despite their temporary absence from Marlborough, the town continues to be their domicile for voting purposes.[5]

Pursuant to RSA 654:2,

> [a] domicile for voting purposes acquired by any person in any town shall not be interrupted or lost by a temporary absence therefrom with the intention of returning thereto as his home.  Domicile for the purpose of voting as defined in RSA 654:1, once existing, continues to exist until another such domicile is gained.  Domicile for purposes of voting is a question of fact and intention.  A voter can have only one

time.  Accordingly, the court finds that the decision of the Cheshire County Superior Court in Veale v. Town of Marlborough, No. 88-E-108, supra, conclusively establishes that the Veales resided in Keene, New Hampshire, from November 1987 through February 1989.

[5]Plaintiffs also continue to argue, as they have in response to previous motions filed by defendants in this action, that the real issue the court needs to address is whether plaintiffs own certain property in Marlborough which they claim to own.  The court disagrees.  As the court has previously explained, the only claim remaining in this action is plaintiffs' claim that defendant violated their right to vote.  Whether plaintiffs own property in Marlborough is irrelevant to this court's evaluation of that claim because an individual need not own property in a town in order to be domiciled there for voting purposes.

11

domicile for these purposes.

In considering whether a party has a right to vote in a town despite his temporary absence therefrom, "[a]n assertion by [the] party that he regards a certain town as his home is entitled to great weight on the issue of his intention but it must be weighed against his actions . . . ." McGee v. Bragg, 94 N.H. 349, 352, 53 A.2d 428, 430 (1947); see also Every v. Supervisors of Madison Checklist, 124 N.H. 824, 827-28, 474 A.2d 1059, 1061 (1984) (a person's assertions of his intent to make a particular town his domicile for voting purposes "must be weighed against his actions").

One's domicile for voting purposes is "the voter's residence to which, upon temporary absence, he has the intention of returning. This domicile is that place in which he dwells on a continuing basis for a significant portion of each year." RSA 654:1, I (emphasis added).

Based on the lawsuits described herein at pages 9-10, at the time the supervisors denied plaintiffs' request that they be added to Marlborough's voter checklist, those officials knew that plaintiffs had been "residing" in Keene since November of 1987 and that plaintiffs' placement of a mobile home on a Bassett Court lot in November 1989 had been illegal.  Plaintiffs did not

12

provide defendant with any address other than Bassett Court and a post office box number on their applications. Further, although plaintiffs stated that they intended to return to Marlborough and live on the property they claim to own there, there is no evidence that there was a date certain when plaintiffs would return to Marlborough.[6]

In short, plaintiffs have not submitted any evidence to show that in 1990 Marlborough was the town in which they dwelled "on a continuing basis for a significant portion of each year."[7] RSA 654:1, I. Further, plaintiffs' assertions that Marlborough is their only domicile and that they intend to return there in the future must be weighed against their actions. Here, there is no evidence that plaintiffs have actually resided in Marlborough since November 1987.

Based on the evidence before it, which the court construes in plaintiffs' favor, the court concludes that no reasonable jury could find that the Town of Marlborough's rejection of

---

[6]Indeed, defendant has submitted evidence showing that plaintiffs resided in Bennington, New Hampshire, from at least December of 1992 through June of 1994, and that Scott Veale received rent and food assistance from the Town of Bennington during part of that time period. See Applications for Aid and correspondence related thereto (attached to Defendant's Motion as Exhibit E).

[7]The court notes that plaintiffs' only "factual physical presence" in Marlborough during the relevant time period was determined to be illegal by the Cheshire County Superior Court.

plaintiffs' applications to register to vote was a constitutional violation of plaintiffs' right to vote.  Therefore, defendant's motion for summary judgment must be and herewith is granted.

## Conclusion

For the reasons stated herein, defendant's supplemental motion for summary judgment (document 78) is granted.  The clerk's office shall enter judgment accordingly.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

August 30, 1995

cc:  Scott W. Veale, pro se
     David T. Veale, pro se
     David P. Slawsky, Esq.

14