**MILLER HYDRO GROUP, Plaintiff,**

v.

**Michael POPOVITCH, David W. Bintz, and Ward Sanders, Defendants.**

**Civ. No. 91–281–P–C.**

United States District Court, D. Maine.

April 25, 1994.

George S. Isaacson, David Bertoni, Brann & Isaacson, Lewiston, ME, for plaintiff.

Wendell G. Large, Jennifer S. Cicchetti, Richardson & Troubh, Portland, ME, Daniel L. Goldberg, Barbara E. Kellogg, Bingham, Dana & Gould, Boston, MA, for defendant Michael Popovitch.

Leland N. Chisholm, Kelly, Remmel & Zimmerman, Portland, ME, for defendant David W. Bintz.

Thomas C. Newman, Ann M. Courtney, Murray, Plumb & Murray, Portland, ME, Elena M. Gervino, Dean M. Cordiano, Lauren Greenspoon, Day, Berry & Howard, Hartford, CT, for defendant Ward Sanders.

## MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

In this action, Plaintiff Miller Hydro Group ("MHG") seeks relief from Defendants Michael Popovitch, David W. Bintz and Ward Sanders for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and a state-law claim of fraud and negligent misrepresentation. Complaint (Docket No. 1) at Counts I, II, and III. Defendants are current and former employees of Combustion Engineering, Inc. ("CE"), a Delaware corporation engaged in the business of providing hydroelectric facilities to developers on a turnkey basis. Complaint at ¶ 5. MHG's action against Defendants stems from an alleged scheme whereby Defendants

and CE misrepresented the power capacity of a hydroelectric facility that it was building on contract for MHG, in order to obtain a higher profit based on a "power production bonus" provision in the contract.

Defendants have moved to have all counts against them dismissed or, in the alternative, for summary judgment. Motion by Defendant Popovitch to Dismiss Complaint (Docket No. 35), Motion by Defendant Bintz to Dismiss Complaint (Docket No. 37), and Motion by Defendant Sanders for Summary Judgment (Docket No. 39).[1] Defendants argue that all counts fail to state a claim because they are barred by the doctrines of *res judicata* or collateral estoppel, stemming from MHG's earlier litigation against CE. *Combustion Engineering v. Miller Hydro Group*, Civil No. 89–0168–P–C, and *Combustion Engineering v. Miller Hydro Group*, 13 F.3d 437 (1st Cir.1993). Defendants also argue that the RICO violations alleged in Counts I and II should be dismissed because they fail to state a claim *and* for lack of standing. Fed.R.Civ.P. 12(b)(6) and 12(b)(1). After careful review of the pleadings in the instant case and the matters presented outside the pleadings which pertain to MHG's prior litigation with CE, this Court finds that there is no genuine issue as to any material fact and that Defendants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## I. Undisputed Facts

In *Combustion Engineering v. Miller Hydro Group*, 13 F.3d 437, 439–40 (1st Cir.

1993), the Court of Appeals for the First Circuit described in detail the facts underlying MHG's dispute with CE. This Court will not repeat those facts here except to state that the dispute centered around a contract entered into in 1986 between CE and MHG. The contract provided that CE would build a hydroelectric facility for MHG with a capacity of 7800 cubic feet of water per second ("cfs") and an expected power capacity of 14 megawatts. Instead, CE built a far larger plant, over 9000 cfs and a power capacity of 18 to 19 megawatts, and misrepresented the size of the plant to MHG, allegedly in an effort to inflate the power production bonus that was written into the contract. When CE had the facility's power output tested and reported the results to MHG, MHG refused to pay the bonus, refused to issue its final acceptance of the facility, and refused to make other final payments.

CE sued MHG in this Court, alleging breach of contract as well as equitable claims. MHG counterclaimed against CE, asserting claims based on breach of contract and fraud. MHG amended its counterclaims to allege RICO violations against CE and CE's individual employees, including Defendants, but later withdrew the RICO claims against the individual employees and filed this separate action.

By order of October 4, 1991, this Court dismissed MHG's RICO counterclaims against CE. The case went to trial before a jury during which this Court issued a direct-

---

1. This Court has considered matters outside the pleadings in issuing this order and has decided to treat the Motions to Dismiss of Defendants Popovitch and Bintz as Motions for Summary Judgment, provided for by Rules 12(b) and 56. Fed.R.Civ.P. 12(b) and 56. The matters considered outside the pleadings in the instant case consist of the pleadings, special jury verdict form, judgments rendered by this Court, and the opinion of the Court of Appeals for the First Circuit, all generated in MHG's prior litigation with Defendants' employer, Combustion Engineering. *Combustion Engineering v. Miller Hydro Group*, Civil No. 89–0168–P–C, and *Combustion Engineering v. Miller Hydro Group*, 13 F.3d 437 (1st Cir.1993).

MHG has responded to Defendants Popovitch's and Bintz's Motions, basing its arguments on the information cited above and, hence, has been given sufficient notice and opportunity to re-

spond as required by Rule 12(b). Fed.R.Civ.P. 12(b) (requiring that "all parties shall be given reasonable opportunity to present all material made pertinent" in the event that the court treats a Rule 12(b) motion as a motion for summary judgment). This Court has recently denied MHG's Motion to Strike Defendant Sanders' Motion for Summary Judgment (Docket No. 42) (arguing that Defendant Sanders failed to file a statement of material facts as required by Local Rule 19). The Court finds it unnecessary to provide MHG with an opportunity to respond to that Motion because the arguments raised in Sanders' Motion and accompanying Memorandum in Support have already been raised in the Motions to Dismiss filed by Defendants Popovitch and Bintz. Accordingly, this Court has considered Sanders' Motion only to the extent that he has incorporated the arguments of the other Defendants.

ed verdict against CE on its contract claims. MHG's contract and fraud counterclaims were submitted to the jury, which found that CE breached the contract and provided materially false information to MHG. With respect to the fraud count, the jury found that CE made false representations for the purpose of inducing MHG to act in reliance. But the jury answered "NO" to the following question:

> Do you find by clear and convincing evidence that Miller Hydro Group justifiably relied upon such misrepresentations, and that such reliance caused Miller Hydro Group economic loss?

Special Jury Verdict Form, attached as Exhibit 4 to Defendant Popovitch's Memorandum in Support of Motion to Dismiss ("Popovitch Memo") (Docket No. 36), at question 13. Similarly, the jury found no evidence of damages on the contract claim, awarding no damages to MHG.

MHG appealed this Court's dismissal of its RICO claims against CE but did not challenge the jury's finding of no damages on its counterclaims. The Court of Appeals for the First Circuit held that the jury's finding on the fraud claim indicated that MHG suffered no prejudice from this Court's dismissal of its RICO claims. *Combustion Engineering*, 13 F.3d at 446. Because common claims of alleged fraud and damages underlie both the state-law and RICO counts, the Court of Appeals viewed the jury's finding of no damages on the fraud claim as dispositive of the issue of damages on the RICO claims. *Id.* The Court of Appeals wrote, "the jury finding of no damages on the former suggests the same outcome would have resulted on the latter." *Id.*

The RICO claims and state-law claim of fraud and negligent misrepresentation in this action mirror the RICO and fraud counterclaims filed against CE in the earlier action. *Compare* Complaint with Counterclaim and Amended Counterclaim, attached as Exhibits 1 and 2 to Popovitch Memorandum in Support of Motion to Dismiss ("Popovitch Memo") (Docket No. 36). The factual allegations in the Complaint, while more detailed than the facts alleged in MHG's counterclaims, boil down to the same basic scheme of alleged fraud and misrepresentation against MHG in an effort to secure a higher profit under the contract. In addition, the Complaint and counterclaim detail identical instances of mail and wire fraud in support of the alleged RICO violations and similar allegations of misrepresentation, omissions, and fraud in support of the state-law claim. *See* Complaint at ¶¶ 31–32 and 38–46; Amended Counterclaim, attached as Exhibit 2 to Popovitch Memo, at ¶¶ 152–153; and Counterclaim, attached as Exhibit 1 to Popovitch Memo, at ¶¶ 81–87.

Defendants argue that Plaintiff is now alleging the same facts and raising identical RICO and state fraud claims in the current action. In their words, "MHG has merely switched adversaries and brought virtually the same claims, with the same alleged damages, against the employees of the counterclaim defendant in the prior action." Popovitch Memo at 8. This Court agrees, finding that MHG is barred by collateral estoppel from relitigating the issue of damages and, hence, fails to state a claim in the instant action.

## II. MHG is Collaterally Estopped from Relitigating Damages

Five elements must be present in order for a party to be estopped from relitigating an issue that was determined in an earlier action:

1. the determination ... must be over an issue which was actually litigated in the first forum;

2. that determination must result in a valid and final judgment;

3. the determination must be essential to the judgment which is rendered by, and in, the first forum;

4. the issue before the second forum must be the same as the one in the first forum; and

5. the parties in the second action must be the same as those in the first.

*NLRB v. Donna–Lee Sportswear Co.*, 836 F.2d 31, 34 (1st Cir.1987). Maine courts follow similar guidelines in applying collateral estoppel. *See Sevigny v. Home Builders Association*, 429 A.2d 197, 201–202 (Me.1981)

("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.") Only the last two elements of the collateral estoppel test are in dispute here.[2]

### A. Same Parties

It is a very close question whether CE and its employee-Defendants are in privity for the purposes of satisfying the fifth element of the collateral estoppel test. *See Donna–Lee Sportswear Co.,* 836 F.2d at 34 ("The traditional exception to the rule that issue preclusion affects only the parties to the initial litigation has been the understanding that the privies of those parties are also bound.") The Court of Appeals for the First Circuit has found privity, allowing a second party to deflect a suit through estoppel, where "the new defendants have a close and significant relationship with the original defendants, such as when the new defendants were named as conspirators in the first proceeding but were not joined in the action." *In re El San Juan Hotel Corporation,* 841 F.2d 6, 10 (1st Cir.1988) (citations omitted). Here, Defendants are employees of CE who, according to Plaintiff's Complaint, were closely aligned with the company in carrying out the misrepresentation scheme. *See, e.g.,* Complaint ¶¶ 4–5, 11, 14, 18 (allegations that discuss CE's and Defendants' acts of fraud and misrepresentation interchangeably). MHG also named CE as a nonparty co-conspirator with Defendants and initially joined Defendants as co-conspirators in the earlier action against CE. *See* Amended Counterclaim, attached as Exhibit 2 to Popovitch Memo, at ¶¶ 128–29 & 160 (alleging that CE and Defendants engaged in a RICO conspiracy). With no allegations that Defendants acted outside their scope of employment, MHG's Complaint depicts the identity, conduct, and legal interests of CE and its employee-Defendants as identical.

Even if the parties are not in privity, however, this Court finds that nonmutual defensive collateral estoppel is appropriate in these circumstances. *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (holding that invalidity of patent determined in prior lawsuit may preclude plaintiff's assertion of patent validity in later infringement suit brought against different defendant); *see also Hossler v. Barry,* 403 A.2d 762, 768 (Me.1979) (noting that nonmutual, "defensive use of collateral estoppel has achieved general judicial recognition"). In *Blonder–Tongue Laboratories,* the Supreme Court indicated that once a litigant has had a full and fair opportunity to litigate an issue, it may no longer be tenable to afford that litigant another chance at judicial resolution of the same issue, even if a different party is involved in the action. *Blonder–Tongue Laboratories,* 402 U.S. at 328, 91 S.Ct. at 1443. The Court stated:

> In any lawsuit where a defendant ... is forced to present a complete defense on the merits to a claim which the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources.... Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or 'a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.'

*Id.* at 329, 91 S.Ct. at 1443 (*quoting Kerotest Mfg. Co. v. C–O–Two Co.,* 342 U.S. 180, 185, 72 S.Ct. 219, 222, 96 L.Ed. 200 (1952)). The Supreme Court stated that "determining whether the party against whom an estoppel

---

**2.** In its Memorandum in Opposition to Defendants' Motions to Dismiss ("Plaintiff's Memo") (Docket No. 41), MHG primarily contests the fourth element, arguing that the damages issue in the first action is not the same issue that must be litigated in this case. MHG does not contest the fifth element of identical parties in its opposition to applying collateral estoppel. However, MHG does argue that CE and Defendants should not be considered as parties in privity for the purposes of *res judicata.* Plaintiff's Memo at 3–4.

In order to clarify the basis for applying collateral estoppel to the issue of damages, this Court will address the fifth element of the collateral estoppel test requiring that the parties in the second action be the same as the parties in the first.

is asserted had a full and fair opportunity to litigate is a most significant safeguard." *Id.* This Court finds that MHG had a full and fair opportunity to litigate the issue of damages stemming from CE's acts of fraud and misrepresentation. MHG litigated the issue of damages on its fraud claim against CE and chose not to challenge the jury's finding of no damages on its appeal to the Court of Appeals for the First Circuit, after which judgment on MHG's fraud claim became final.

### B. Same Issue Raised

MHG also challenges the fourth element of the test, arguing that collateral estoppel is inapplicable because the issue of damages litigated in *Combustion Engineering* is not the same issue that MHG must establish to maintain its claims in this action. The Court will examine, in turn, the issue of damages in the context of the RICO and state-law claims.

### 1. Damages issue is the same as "injury" requirement under RICO

■ In order to bring a civil action, a RICO plaintiff must show, as a threshold matter, that he was:

(1) *injured* in his business or property;

(2) *by reason of a violation* of section 1962 of this chapter. . . . [3]

**3.** The violations alleged in Plaintiff's Complaint include predicate acts of mail and wire fraud in violation of sections 1962(b) and 1962(d). 18 U.S.C. §§ 1962(b), (d). Section 1962(b) provides that:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(b). Section 1962(d) makes it "unlawful for any person to conspire to violate" any of the provisions of section 1962, including 1962(b). 18 U.S.C. §§ 1962(a)–(d).

**4.** The Court of Appeals for the First Circuit has already rejected a similar argument when MHG attempted to distinguish the damages component of its state fraud claim from its RICO claims in *Combustion Engineering* based on the possible difference in remedy of attorney fees as provided under the RICO statute. 18 U.S.C. § 1964(c). While the Court of Appeals dismissed MHG's

18 U.S.C. § 1964(c) (emphasis added); *see also Sedima, S. P. R. L. v. Imrex Co.,* 473 U.S. 479, 495–96, 105 S.Ct. 3275, 3284–85, 87 L.Ed.2d 346 (1985). Courts have interpreted the "injury" provision to require a RICO plaintiff to establish "a proprietary type of damage" in order to bring a civil action under the statute. *See, e.g., Bankers Trust Co. v. Rhoades,* 741 F.2d 511, 515 (2d Cir.1984), vacated on other grounds, 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985). Absent a showing sufficient to establish the existence of actual financial loss or injury, "a RICO claim cannot be sustained" and dismissal or "summary judgment is required." *Berg v. First State Ins. Co.,* 915 F.2d 460, 464 (9th Cir.1990) (*quoting First Pacific Bancorp, Inc. v. Bro,* 847 F.2d 542, 547 (9th Cir.1988)); *cf. Lincoln House, Inc. v. Dupre,* 903 F.2d 845 (1st Cir.1990) (holding that plaintiff's RICO claim was properly dismissed where alleged injury was contingent on outcome of pending state court action that might or might not end in ruling favorable to plaintiff).

■ MHG argues that the "injury" requirement in its RICO counts is distinct from the damages issue litigated in *Combustion Engineering* because "a central element of damages sought in this case are [sic] those resulting from the litigation between CE and MHG." [4] Plaintiff's Memorandum in Opposition to Defendants' Motions to Dismiss

argument with little discussion, it is obvious from a reading of section 1964(c) that a plaintiff is not entitled to attorneys' fees *unless* that plaintiff can show he was "injured in his business or property" by a RICO violation and that attorneys' fees are not generally allowable to establish injury for the purposes of standing. Section 1964(c) provides that:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c). Since MHG failed to show damages on its state fraud claim and the same fraudulent conduct underlies its RICO claims against CE, the Court of Appeals did not consider attorneys' fees as part of the remedy to which MHG was entitled nor as an element sufficient to differentiate the damages on its state fraud claim from the damages asserted on its RICO claims.

(Docket No. 41) at 2, 6. In order to establish that attorneys' fees and costs incurred in *Combustion Engineering* constitute injury for the purposes of bringing this civil RICO action, MHG must establish that the litigation fees were caused by Defendants' RICO violations. 18 U.S.C. § 1964(c) (entitles party to bring civil cause of action if he was *"injured* in his business or property *by reason of"* a RICO violation) (emphasis added). *See also Sedima,* 473 U.S. at 496, 105 S.Ct. at 3285 ("plaintiff only has standing if, and can only recover to the extent that ... he has been injured in his business or property by the conduct constituting the violation.") Courts apply a proximate-cause analysis to civil RICO claims, requiring that the "injury" to business or property flow from the predicate acts alleged in the complaint. *Willis v. Lipton,* 947 F.2d 998, 1000 (1st Cir.1991) (no RICO standing unless predicate act itself causes the injury).

■ In this case, the Complaint asks for attorneys' fees "incurred in defense of the principal claim in this matter" as part of the relief against Defendants. Complaint at ¶ 46(D). There are no allegations regarding the precise RICO violations that allegedly led to these litigation costs except for a vague assertion that the RICO Defendants and CE have sought "to coerce Miller Hydro into the payment of an exaggerated power production bonus." Complaint at ¶¶ 35 & 36. If this allegation is meant to refer to CE's filing of the earlier suit against MHG, it does not allege that the litigation costs were specifically caused by any of Defendants' predicate acts of wire fraud and mail fraud or other violations of the RICO statute.[5]

MHG fails to supply any factual basis for determining whether a connection exists between the litigation costs incurred in *Combustion Engineering* and Defendant's RICO violations.[6] Instead, a proximate-cause anal-

---

**5.** Plaintiff attempts to remedy this deficiency by arguing that the legal fees incurred in *Combustion Engineering* are recoverable based on the "tort of another" doctrine. Plaintiff's Memorandum in Opposition to Defendants' Motions to Dismiss (Docket No. 41) at 2. That doctrine, which is discussed more fully on pages 14–15, *infra,* merely provides Plaintiff with a possible claim of relief under Maine law and does not allow Plaintiff to circumvent the federal RICO statute's requirement that a plaintiff show injury "by reason of" a RICO violation. 18 U.S.C. § 1964(c). In addition, the "tort of another" doctrine similarly requires a showing of proximate cause between a defendant's tort and a plaintiff's accrual of legal expenses in an action with a third party. *See, e.g., Hanlin Group, Inc. v. International Minerals & Chemical Corp.,* 759 F.Supp. 925, 938 (D.Me.1990) (holding that plaintiff may be entitled to recover attorney fees from litigation against third party "to the extent it is able to establish that they were a natural and proximate result of [defendant's] tortious acts"). Just as Plaintiff has failed to show proximate cause between its litigation fees and Defendants' RICO violations, so too has it failed to allege proximate cause between the costs it incurred in *Combustion Engineering* and Defendants' alleged acts of fraud and negligent misrepresentation. *See* pages 14–15, *infra.*

**6.** The only cases known to this Court where RICO plaintiffs have been allowed to include attorneys' fees incurred in prior litigation for the purpose of establishing injury have involved cases where plaintiffs advanced specific factual allegations linking the legal fees to RICO violations. *See, e.g., Stochastic Decisions v. DiDomenico,* 995 F.2d 1158 (2d Cir.1993), *cert. denied,* ——

U.S. ——, 114 S.Ct. 385, 126 L.Ed.2d 334 (1993) (holding that legal fees incurred by judgment creditor in initially obtaining judgments against debtors were not recoverable under RICO because fees did not stem from RICO violations; but legal fees expended by judgment creditor in collecting judgments did constitute injury where complaint alleged that RICO violations consisted of a conspiracy by debtors to impede plaintiff's collection of those judgments); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096 (2d Cir.1988), *cert. denied, sub nom. Soifer v. Bankers Trust Co.,* 490 U.S. 1007, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989) (holding that creditor who agreed to a reorganization plan for an allegedly bankrupt defendant could later claim as "RICO injury" legal fees incurred in fighting subsequent frivolous suits filed by debtor; in fighting legal decisions by a South Carolina judge who was bribed by debtor to issue rulings in its favor; and in obtaining a revocation of the initial reorganization plan which was issued based on debtor's misrepresentations to the bankruptcy court); *Malley–Duff & Associates v. Crown Life Ins. Co.,* 792 F.2d 341 (3d Cir.1986), *aff'd sub nom. Agency Holding Corp. v. Malley–Duff & Associates,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) and *Miller v. Glen & Helen Aircraft, Inc.* 777 F.2d 496 (9th Cir.1985) (with both cases holding that expenses of prior litigation were available as damages under RICO where expenses were caused by defendants' alleged obstruction of justice in prior federal actions, in violation of RICO).

These cases stand for the proposition that attorneys' fees can be considered as injury to the plaintiff only when the litigation costs stem from

ysis indicates that MHG's legal fees stemmed from CE's decision to file a breach-of-contract action. As the Court of Appeals for the First Circuit has noted, "The RICO Act provides no cause of action to individuals injured *by acts other than* criminal RICO violations." *Nodine v. Textron, Inc.*, 819 F.2d 347, 349 (1st Cir.1987) (emphasis added). Hence, attorneys' fees do not distinguish the damages issue from what has already been litigated in *Combustion Engineering.* Because MHG fails to allege any other substantial differences,[7] this Court finds that the issue of damages determined in *Combustion Engineering* is essentially the same issue of injury to business or property that Plaintiff must show in order to bring a civil RICO action. Because there is no genuine issue of material fact in dispute with respect to the damages issue, this Court will grant summary judgment to Defendants on RICO Counts I and II.

### 2. Damages issue is same issue that must be established in state-law claims

■■■ Under Maine law, a plaintiff must show the element of *damage* in order to make out a claim of fraud. *Bartner v. Carter,* 405 A.2d 194 (Me.1979). Negligent misrepresentation, on the other hand, requires Plaintiff to show *pecuniary loss. Chapman v. Rideout,* 568 A.2d 829, 830 (Me.1990). MHG raises the same arguments against applying collateral estoppel to the damages is-

sue in its state-law claim; namely, that the issue to be litigated is different because of the additional assertion of attorneys' fees and costs incurred in *Combustion Engineering.* Plaintiff argues that the legal fees are recoverable under Maine law based on the "tort of another" doctrine. Plaintiff's Memorandum in Opposition to Defendants' Motions to Dismiss (Docket No. 41) at 2. Defendants argue that the doctrine does not apply because MHG does not allege that CE is a third party, distinct from its employee-Defendants. Reply by Defendant Popovitch (Docket No. 53) at 2–5. The doctrine provides that:

(1) The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation.
(2) One who through the TORT of ANOTHER has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

Restatement (Second) of Torts § 914. *See also Gagnon v. Turgeon,* 271 A.2d 634, 635 (Me.1970) (adopting tort of another doctrine).

■■■ While the Maine Law Court approved of the tort of another doctrine in *Gagnon,* it went on to hold that the doctrine does not apply to situations where the party from whom a plaintiff seeks attorneys' fees is "in privy to the contract agreement or events

---

actual RICO violations; in other words, but for a party's racketeering activity, plaintiff's litigation costs would not have been incurred.

7. Other differences which Plaintiff alleges should prevent this Court from applying collateral estoppel include the fact that the standard of proof of "clear and convincing evidence" was applied to the jury's finding of damages on the state law fraud claim as opposed to a "preponderance of the evidence" which would be applied to a finding of damages on a RICO claim. Plaintiff's Memo in Opposition to Defendants' Motion to Dismiss at 6–7. The Court of Appeals for the First Circuit has already rejected this argument in *Combustion,* indicating that only "where the issue of damages is shown to be very close ... [would] the asserted difference in burden of proof between a common law fraud and a civil RICO claim ... be decisive." The Court of Appeals went on to point out that MHG failed to discuss the evidence of damages in any detail on

appeal or provide any basis for believing that the standard of proof actually altered the result in the case. So too in this action, in its arguments opposing Defendants' Summary Judgment and Motions to Dismiss, Plaintiff merely alleges that the burden of proof made a difference but points to no factual support for this allegation.

Plaintiff also asserts that the jury's finding in *Combustion* is unclear based on the wording of the verdict form which states "Do you find by clear and convincing evidence that Miller Hydro Group justifiably relied upon such misrepresentations, and that such reliance caused Miller Hydro Group economic loss?" Plaintiff's Memo at 7. While the jury's answer of "no" to the verdict form may leave the finding with respect to justifiable reliance unclear, the end result, with or without justifiable reliance, is that MHG suffered no economic loss from Combustion's misrepresentations. The wording of the jury verdict form leaves no doubt as to the finding on damages.

through which the [initial] litigation arises." *Id.* at 636. MHG's Complaint makes no distinction between the acts of Defendants and the acts of CE and, in fact, labels them as co-conspirators. Complaint at ¶ 5. This Court finds that Defendants acted in privy with the scheme to defraud MHG which was the basis for the initial litigation. Thus, the tort of another doctrine does not apply to this case.[8]

MHG also fails to make out a claim under the tort of another doctrine because there are no factual allegations supporting MHG's claim that tortious acts of Defendants were the proximate cause of CE's suit against MHG. *See Gagnon,* 271 A.2d at 635 (attorneys' fees and costs may be recovered as damages if they are "the natural and probable consequences of. [defendant's] act"); *Hanlin Group, Inc. v. International Minerals & Chemical Corp.,* 759 F.Supp. 925, 938 (D.Me.1990) (plaintiff entitled to attorneys' fees and litigation costs "to the extent it is able to establish that they were a natural and proximate result of [defendant's] tortious acts"). As previously discussed, the Complaint asks for attorneys' fees as part of MHG's relief for Defendant's RICO violations and state-law claims of fraud and negligent misrepresentation. But there are no allegations that Defendants' acts of fraud in any way caused CE to sue MHG. Absent any showing of proximate cause, along with its failure to allege that CE is a third party, MHG's attempt to use the tort of another doctrine is unavailing. Finding no genuine issue of material fact in dispute with respect to the issue of damages on MHG's fraud and negligent misrepresentation claim, this Court

will grant summary judgment to Defendants on Count III of the Complaint.

Accordingly, it is *ORDERED* that Defendants' Motions for Summary Judgment be, and they are hereby, *GRANTED* on Count I, Count II, and Count III of MHG's Complaint.

---

8. This Court also finds support in the reasoning of a California court which held that "an employee cannot be sued under the 'tort of another' doctrine to recover attorneys' fees incurred in an action against the employer unless it is shown the employee was not acting on behalf of the employer." *Golden West Baseball Co. v. Talley,* 232 Cal.App.3d 1294, 1302, 284 Cal.Rptr. 53 (1991) (holding that party who sued city could not later sue city manager for costs of pursuing first action). The California court stated that a contrary holding would undermine the general rule that parties bear their own costs of litigation because:

> [A] second lawsuit would inevitably follow every successful action against an employer. Discovery and trial would identify the employ-

ees responsible for tortious conduct, and they in turn would become defendants in a second suit to recover the attorneys' fees expended in the first. Moreover, the employer would inevitably be required to pay the 'damages' of the second suit.

*Id.* at 1302–03, 284 Cal.Rptr. 53.

For a case in which this Court found that the tort of another doctrine appropriately applied, *see Hanlin Group, Inc.,* 759 F.Supp. 925 (holding that purchaser stated claim for relief against vendor, including attorneys' fees and costs, on theory that vendor's release of hazardous chemicals at its plant and concealment of those releases wrongfully involved purchaser in litigation against the Environmental Protection Agency).