

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-5-1998

# Hirsch v. Dorsey Trailers Inc

Precedential or Non-Precedential:

Docket 97-7542

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Hirsch v. Dorsey Trailers Inc" (1998). *1998 Decisions.* Paper 131.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/131

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 5, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-7542

PETER W. HIRSCH, Regional Director of the Fourth
Region of the National Labor Relations Board, for and on
behalf of the National Labor Relations Board,
         Appellant

v.

DORSEY TRAILERS, INC., Northumberland PA Plant
*Amended per the Clerk's Order of 12/5/97

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 97-cv-00148)

Argued May 21, 1998

Before: SLOVITER, GREENBERG and GIBSON,*
Circuit Judges

(Filed June 5, 1998)

Ellen A. Farrell
Judith Katz
Jayme L. Sophir (Argued)
National Labor Relations Board
Washington, D.C. 20570

 Attorneys for Appellant

_____

* Hon. John R. Gibson, United States Senior Circuit Judge for the United
States Court of Appeals for the Eighth Circuit, sitting by designation.

Michael S. Mitchell (Argued)
Fisher & Phillips
New Orleans, LA 70170

 Attorney for Appellee

Stephen A. Yokich (Argued)
United Auto Workers, International
 Union
Washington, D.C. 20036

 Attorney for Amicus-Appellant
 International Union, United
 Automobile, Aerospace and
 Agricultural Implement Workers of
 America

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant, Peter W. Hirsch, Director of Region Four, on behalf of the National Labor Relations Board ("NLRB" or "the Board"), appeals from the district court's order denying a temporary injunction under S 10(j) of the National Labor Relations Act ("NLRA"), codified at 29 U.S.C. S 160(j). The injunction was sought pending the resolution by the NLRB of unfair labor practice charges against appellee Dorsey Trailers Inc. The district court concluded that a S 10(j) injunction would not be "just and proper," the statutory standard for an injunction under the NLRA. The Board timely appealed. The International Union of United Automobile, Aerospace and Agricultural Implement Workers of America, Local 1868 ("UAW" or "the union"), which is the bargaining representative of the workers affected by the denial of injunctive relief, has filed a brief amicus curiae in support of the Board's appeal.

We have jurisdiction under 28 U.S.C. S 1291, 1292(a)(1) and 29 U.S.C. S 160(j). Our review of the denial of a S 10(j) injunction is for abuse of discretion, see Eisenberg v. Lenape Products, Inc., 781 F.2d 999, 1003 (3d Cir. 1986), and we have held we may reverse the denial of a S 10(j)

2

injunction if the factual findings do not "substantially relate to the conclusion reached" by the district court. Kobell v. Suburban Lines, Inc., 731 F.2d 1076, 1092 (3d Cir. 1984).

I.

This appeal centers on the circumstances surrounding the December 1995 closure of a plant in Northumberland, Pennsylvania, that once employed 200 UAW workers who manufactured dump and flatbed trailers for Dorsey. The facts set forth below are taken from the record and, unless noted, are not in dispute, although the exact dates are not always clear. In February 1995, Dorsey and the UAW began negotiating a new Collective Bargaining Agreement (CBA) because the prior CBA was due to expire in March 1995. The primary issues concerned overtime and subcontracting. Dorsey warned that if no agreement could be reached or if the union were to strike, Dorsey would close the plant. App. at 47-49. Negotiations were conducted between February and May but the parties were unable to reach agreement on a new contract.

The union began a strike on June 26, 1995, to protest alleged unfair labor practices of Dorsey. App. at 50. On June 30, 1995, the union filed the first of four unfair labor practice charges against the employer. In September 1995, Dorsey began to negotiate for the purchase of a new plant in Cartersville, Georgia, and on October 5, 1995, reached a basic agreement in principle to purchase the plant. App. at 145-46. It had concluded that it would be to its financial benefit to operate the Georgia plant rather than the Northumberland facility. App. at 138-41. On October 9, 1995, Dorsey notified the union of its impending purchase and its intention to move the Northumberland work there. However, it also offered to continue to bargain over the "effects of that decision and the decision itself." App. at 189. Thereafter, the union unconditionally offered to come back to work but by then Dorsey was seeking substantial concessions. App. at 164. Further negotiations proved fruitless. Dorsey described the union's concessions on overtime as "too little too late." App. at 66; 177.

On November 9, 1995, Dorsey formally notified the union of its decision to close the Northumberland plant and move

3

its operations to Georgia. At that time, Dorsey began moving the plant equipment. App. at 181. On November 16, 1995, the union filed the fourth of its unfair labor charges against Dorsey alleging that Dorsey improperly transferred work to the Georgia plant. The union asked the Board to seek temporary injunctive relief under S 10(j), but the Board did not act on the request at that time. Dorsey shut down the plant on December 29, 1995, and has attempted to sell it since then. App. at 252–53.

There was a lapse in Dorsey's operations resulting from the move, and it began its Georgia operations in March 1996. When it determined that it could not manufacture at the new plant all of the trucks that it had manufactured at Northumberland, Dorsey decided it would limit its Georgia plant to the manufacture of flatbed trailers. In July 1996 it purchased a South Carolina facility to build dump trailers, previously manufactured in Northumberland.

Dorsey estimates its total costs of moving the Northumberland operations to Georgia and South Carolina exceeded $900,000, app. at 197, and the costs of maintaining the closed Northumberland plant for the first six months of 1997 to be $130,000, app. at 198, and that continued maintenance costs continue to be a terrible drain.

The Board issued a consolidated complaint in August 1996 (later amended in October 1996) charging Dorsey with numerous violations of the NLRA, including threatening employees with closure of the plant if the workers called a strike, refusing to provide company information necessary for bargaining, unilaterally implementing a new attendance policy, and refusing to fairly bargain regarding the transfer of work to Georgia. Following a three-day trial in November 1996, the Administrative Law Judge issued a comprehensive fifty-six page decision on December 1, 1997, finding in large part that Dorsey committed the alleged unfair labor practices. See ALJ Decision, at 52. The ALJ's decision ordered a remedy that included the restoration of the Northumberland plant. Id. at 54–56. Dorsey filed exceptions to the decision on January 29, 1998, and the matter is currently pending before the Board. We were advised that briefing was completed recently.

4

Although the union had asked the Board to file a request for a S 10(j) injunction as early as November 1995, the Board did not file such a petition with the district court until January 27, 1997. In its Petition for a S 10(j) injunction, the Board sought to prevent Dorsey from selling or alienating the plant before the Board ruled on the merits of the underlying unfair labor charges. It sought to maintain the status quo and thereby preserve the remedy of restoration should the Board decide to so order.

Following a hearing on July 24, 1997, the district court denied the petition request. Although the court found that there was reasonable cause to believe that Dorsey had committed the unfair labor charges, it also found that S 10(j) relief would not be "just and proper" because: (1) the request was untimely made, noting the fourteen-month delay in seeking S 10(j) relief; (2) the maintenance of the vacant plant was a cash drain on Dorsey, especially in light of the prior expenses of relocation; (3) the workers in Dorsey's Georgia and South Carolina plants could lose their jobs should restoration be ordered; (4) the vast majority of the former Northumberland workers had found new jobs; (5) the sale of the plant would bring new jobs to the region; and (6) the Board could order Dorsey to build a new plant and employ the Northumberland workers, if the plant were sold.

II.

A district court's determination whether to issue temporary injunctive relief under S 10(j) involves a two-fold inquiry: (1) whether there is reasonable cause to believe that an unfair labor practice has occurred; and (2) whether an injunction would be just and proper. See Pascarell v. Vibra Screw Inc., 904 F.2d 874, 877 (3d Cir. 1990) (citation omitted); Suburban Lines, 731 F.2d at 1078 (interim relief under S 10(j) may be granted without showing irreparable harm or a likelihood of success on the merits, the ordinary requisites of an injunction). Because Dorsey does not dispute the district court's finding that the Board has satisfied the "reasonable cause" inquiry, the only question is whether the Board demonstrated that the issuance of an injunction would be "just and proper."

5

The standard to be applied by a district court in determining whether granting temporary relief pursuant to S 10(j) is just and proper should be informed by the policies underlying S 10(j). See Lenape Products, 781 F.2d at 1003; Suburban Lines, 731 F.2d at 1090-91. "Congress sought to ensure that the Board would be able to exercise effectively its ultimate remedial power." Lenape Products, 781 F.2d at 1003. Section 10(j) "was designed to enable the Labor Board to vindicate its ultimate remedial power by affording limited interim relief in instances where the passage of time reasonably necessary to adjudicate the case on its merits convinced both the Board and the federal courts that the failure to grant such relief might dissipate the effective exercise of such power." Suburban Lines, 731 F.2d at 1091. Thus, the focus in a S 10(j) determination is on the public interest, Vibra Screw, 904 F.2d at 876, and "the unusual likelihood . . . of ultimate remedial failure" by the NLRB. Suburban Lines, 731 F.2d at 1091 n.26 (emphasis in original). "The public interest at stake is the promotion of wholesome and mutually acceptable labor relations and the settlement of labor disputes through collective bargaining between employees and their employer." Vibra Screw, 904 F.2d at 876 (citation and quotation marks omitted).

In evaluating whether to issue an injunction under the "just and proper" prong, a district court "should discuss and determine whether the failure to grant interim injunctive relief would be likely to prevent the Board, acting with reasonable expedition, from effectively exercising its ultimate remedial powers." Suburban Lines, 731 F.2d at 1091-92. "[T]he critical determination is whether, absent an injunction, the Board's ability to facilitate peaceful management-labor negotiation will be impaired." Vibra Screw, 904 F.2d at 879. This requires an assessment of "the likelihood of harm to the bargaining process" absent an injunction. Eisenberg v. Wellington Hall Nursing Home, Inc., 651 F.2d 902, 907 (3d Cir. 1981). "Unless there are circumstances, like the size, intimacy and longevity of the bargaining unit, which indicate that the bargaining process will not be harmed, courts must be deferential to the Board's determination that the integrity of the process needs interim protection." Vibra Screw, 904 F.2d at 879 n.7. The S 10(j) analysis must be guided by the particular

facts in each case. See Eisenberg v. Hartz Mountain Corp., 519 F.2d 138, 142 (3d Cir. 1975).

The Board argues that the failure to issue the injunction in this case clearly impairs the "Board's ability to facilitate peaceful management-labor negotiation," Vibra Screw, 904 F.2d at 879, because, absent an injunction, Dorsey could sell the plant before the Board rules upon the unfair labor charges. This would render the Board's ultimate remedial powers toothless. The ALJ has already determined that restoration of the plant is a proper remedy. Although Dorsey argues that restoration is not a proper remedy under these circumstances, but see Coronet Foods, Inc. v. NLRB, 981 F.2d 1284 (D.C. Cir. 1993) (court, per then Judge, now Justice, Ruth Bader Ginsburg, enforced Board order requiring employer to restore trucking department), we need not decide that issue now. Instead, this appeal concerns the district court's exercise of its discretion. It is evident to us that the district court's failure to grant interim injunctive relief to ensure the availability of the plant jeopardizes the Board's ability to effectively exercise its ultimate remedial powers. The alienation of the plant by Dorsey would eliminate that remedy entirely. Under the standards articulated in Suburban Lines, 731 F.2d at 1091-92, this risk is sufficient to satisfy the "just and proper" prong for injunctive relief.

In addition, in denying injunctive relief, the district court relied upon its belief that the Board has the power to order Dorsey to build a new plant if the Board determined that restoration of the Northumberland plant was the proper remedy for the unfair labor charges. Dorsey cites no legal support, and significantly the Board argues it does not have such wide power. It is at least plausible that had the district court recognized that it was likely that a restoration remedy would be unavailable absent an injunction, the district court may have been persuaded to issue the interim relief.

Another basis for the district court's opinion, that a vast majority of the workers from the Northumberland plant had found new jobs, is unsupported on this record. This conclusion was taken from a newspaper article that itself speculates as to this figure. Dorsey's counsel conceded at

7

oral argument that it neither presented nor has any evidence of the number of its former employees who are no longer available. Even if the district court's conclusion were accurate, there is no information whether the new jobs and pay are comparable. In any event, the possible employment of the former employees does not mitigate the need for a S 10(j) injunction.

Moreover, the district court's denial of relief emphasized the cash drain and financial burden of maintenance of the Northumberland plant, and notes the negative impact caused by the relocation. This fails to take into account that the impact was of Dorsey's making. The Board's counsel points to evidence that shows that the burden is minor for a company of Dorsey's income and assets. Also significant in that respect is that in this circuit a S 10(j) injunction is limited to six months when a matter is pending before the Board. See Hartz Mountain, 519 F.2d at 144.

Finally, although we recognize that the Board did not petition for a S 10(j) injunction as early as it might have, the delay should not be dispositive in determining whether to grant injunctive relief. The district court acknowledged that "delay alone is not grounds for denying an injunction," op. at 10, but it is unclear whether its concern over the delay influenced the court's rejection of the injunction. Dorsey moved quickly from its decision to move the operations in the fall of 1995, to the closure of the plant on December 29, 1995. Even if the Board had not delayed until January 1997 to file the S10(j) petition, it is unlikely that it would have been able to seek the injunction and obtain a hearing before the equipment had been transferred and the plant closed. As we noted in Vibra Screw, "The Board needs time to do a thorough investigation before it even requests the [S 10(j)] injunction." 904 F.2d at 881. See also Aguayo v. Tomco Carburetor Co., 853 F.2d 744, 750 (9th Cir. 1988) (delay is only significant if the harm has occurred and the parties cannot be returned to the status quo; the Board needs a reasonable period of time to investigate and deliberate before it decides to bring a section 10(j) action) overruled on other grounds, Miller v. California Pacific Med. Ctr., 19 F.3d 449, 457 (9th Cir. 1994).

8

Although the protracted delay is not entirely justified, it is insufficient under these facts to overcome the primary consideration in evaluating the just and proper standard: that of safeguarding the Board's remedial powers. Using the Board's delay as the basis to deny the requested injunctive relief punishes the wronged employees for the Board's belated action, an unacceptable outcome. See Gottfried v. Mayco Plastics, 472 F. Supp. 1161, 1168 (E.D. Mich. 1979), aff 'd, 615 F.2d 1360 (6th Cir. 1980). Cf. NLRB v. J.H. Rutter–Rex Mfg. Co., 396 U.S. 258, 264-65 (1969) ("the Board is not required to place the consequences of its own delay, even if inordinate, upon wronged employees to the benefit of wrongdoing employers").

During the oral argument counsel for the Board advised this court that the issuance of a S 10(j) injunction invariably prompts the Board to review the ALJ decision on appeal because the Board is aware of the limited six–month duration of the injunction. See Hartz Mountain , 519 F.2d at 144. Indeed, the Board has adopted a regulation requiring it to hear expeditiously and give priority to a complaint which is the subject of a S 10(j) injunction. See 29 C.F.R. S 102.94.

III.

For the reasons set forth, we will remand this case and direct the district court to order interim relief under S10(j).1
_____

1. Although we do not preclude Dorsey from raising on remand the appropriate starting date of the S 10(j) injunction, it is important to note
that it never raised that issue in its brief. Our concurring colleague suggests that the Board has already obtained the relief it is seeking through the S 10(j) injunction. In fact, that has not occurred as the union and the former employees have not received the benefit of the Board's expedited consideration that occurs upon issuance of a S 10(j) injunction.

9

GREENBERG, Circuit Judge, concurring:

I join in the majority opinion but point out the following. The Board seeks an injunction to prevent Dorsey from selling or alienating the plant before the Board rules on the merits of the unfair labor charges. If the district court had entered the injunction on August 26, 1997, when it instead denied it, the injunction already would have expired under the six-month limitation rule we adopted in Eisenberg v. Hartz Mountain Corp., 519 F.2d 138, 144 (3d Cir. 1975). Of course, in that circumstance the Board would have been required to hear the unfair labor practices complaint before it expeditiously on a priority basis.

In fact, it is undisputed that Dorsey shut down the plant on December 29, 1995; and while it has attempted to sell the facility, it has been unable to do so. Moreover, its inability to sell the plant has been attributable at least in part to the Board's intervention, as the Board notified a potential purchaser that if it acquired the plant it might incur successor liability for Dorsey's alleged unfair labor practices. The notification understandably led to the potential sale collapsing. In reality, therefore, the mere fact that the Board brought the unfair labor practices charge has acted as a lis pendens on the property. Thus, even without an injunction having been entered, the status quo with respect to the alienation of the plant has been maintained for a period almost five-fold that which in Hartz Mountain we held could be required.

The majority indicates that its opinion does "not preclude Dorsey from raising on remand the appropriate starting date of the S 10(j) injunction." Slip op. at 9 n.1. I, of course, agree. I write separately merely to emphasize that as I understand the majority's opinion it does not preclude Dorsey from arguing that the starting date should be August 26, 1997, so that the injunction already has expired. After all, the Board in a sense already has obtained the relief it is seeking in these proceedings. I, however, do not explore the point further as the parties have not briefed the starting date issue on this appeal.

10

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit