UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

———————————

No. 08-1973(L)
(2:08-cv-00073)

———————————

GARY W. MUFFLEY, Regional Director of the Ninth Region of the
National Labor Relations Board, for and on behalf of; NATIONAL
LABOR RELATIONS BOARD,

Petitioners - Appellees,

v.

SPARTAN MINING COMPANY, d/b/a Mammoth Coal Company,

Respondent - Appellant,

and

MASSEY ENERGY COMPANY, and its subsidiary,

Respondent.

------------------------------------------------

UNITED MINE WORKERS OF AMERICA,

Amicus Supporting Appellees.

———————————

O R D E R

———————————

The court amends its opinion filed July 1, 2009, as follows:

On page 11, first full paragraph, lines 2 and 3, the word
"distinct" is corrected to read "district."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

GARY W. MUFFLEY, Regional
Director of the Ninth Region of
the National Labor Relations
Board, for and on behalf of;
NATIONAL LABOR RELATIONS
BOARD,

        *Petitioners-Appellees,*

        v.

SPARTAN MINING COMPANY, d/b/a
Mammoth Coal Company,

        *Respondent-Appellant,*

        and

MASSEY ENERGY COMPANY, and its
subsidiary,

        *Respondent.*

No. 08-1973

UNITED MINE WORKERS OF
AMERICA,

        *Amicus Supporting Appellees.*

GARY W. MUFFLEY, Regional
Director of the Ninth Region of
the National Labor Relations
Board, for and on behalf of;
NATIONAL LABOR RELATIONS
BOARD,

*Petitioners-Appellees,*

v.

MASSEY ENERGY COMPANY, and its
subsidiary,

*Respondent-Appellant,*

and

SPARTAN MINING COMPANY, d/b/a
Mammoth Coal Company,

*Respondent.*

———————————————

UNITED MINE WORKERS OF
AMERICA,

*Amicus Supporting Appellees.*

No. 08-2067

GARY W. MUFFLEY, Regional
Director of the Ninth Region of
the National Labor Relations
Board, for and on behalf of;
NATIONAL LABOR RELATIONS
BOARD,

*Petitioners-Appellants,*

v.

SPARTAN MINING COMPANY, d/b/a
Mammoth Coal Company; MASSEY
ENERGY COMPANY, and its
subsidiary,

*Respondents-Appellees.*

No. 08-2201

UNITED MINE WORKERS OF
AMERICA,

*Amicus Supporting Appellants.*

Appeals from the United States District Court
for the Southern District of West Virginia, at Charleston.
Joseph R. Goodwin, Chief District Judge.
(2:08-cv-00073)

Argued: May 12, 2009

Decided: July 1, 2009

Before MOTZ, GREGORY, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Gregory and Judge Duncan joined.

## COUNSEL

**ARGUED:** Forrest Hansbury Roles, DINSMORE & SHOHL LLP, Charleston, West Virginia, for Spartan Mining Company, d/b/a Mammoth Coal Company and Massey Energy Company, and its subsidiary. Laura T. Vazquez, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Gary W. Muffley, Regional Director of the Ninth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board. Judith E. Rivlin, UNITED MINE WORKERS OF AMERICA, Fairfax, Virginia, for Amicus Curiae United Mine Workers of America. **ON BRIEF:** Brace R. Mullett, DINSMORE & SHOHL LLP, Charleston, West Virginia; Richard R. Parker, Jennifer S. Rusie, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PC, Nashville, Tennessee, for Spartan Mining Company, d/b/a Mammoth Coal Company and Massey Energy Company, and its subsidiary. John E. Higgins, Jr., Deputy General Counsel, Barry J. Kearney, Associate General Counsel, Judith I. Katz, Assistant General Counsel, Steven L. Sokolow, Deputy Assistant General Counsel, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Gary W. Muffley, Regional Director of the Ninth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board. Charles F. Donnelly, UNITED MINE WORKERS OF AMERICA, Charleston, West Virginia; Grant Crandall, UNITED MINE WORKERS OF AMERICA, Fairfax, Virginia, for Amicus Curiae United Mine Workers of America.

---

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

After an administrative law judge found that Mammoth Coal Company had systematically discriminated against union

members, the National Labor Relations Board sought injunctive relief in federal district court pursuant to § 10(j) of the National Labor Relations Act. Following an evidentiary hearing, the district court issued a detailed written opinion, explaining its order granting this relief in part and denying it in part. The court ordered Mammoth to offer employment to persons that it had refused to hire because of union affiliation but denied substantial additional injunctive relief sought by the Board. Mammoth appeals, and the Board cross-appeals. For the reasons that follow, we affirm the judgment of the district court.

## I.

### A.

In October 2004, A.T. Massey Coal Company acquired in bankruptcy the coal mining assets of Cannelton Industries, Inc. and Dunn Coal and Dock (Cannelton/Dunn). Massey assigned these assets to its subsidiary, Spartan Mining Company, which does business as Mammoth Coal Company (Mammoth). Mammoth then took over operation of the coal mining facilities located on the Cannelton/Dunn property.

In December 2004, Mammoth began hiring production and maintenance workers for this property. Prior to resuming mining operations, Mammoth offered employment interviews to, and eventually hired, most of the non-bargaining unit employees who had worked at Cannelton/Dunn. Mammoth largely refused, however, to extend employment or even interviews to Cannelton/Dunn laborers who were members of the United Mine Workers of America (UMWA). Instead, Mammoth filled vacant positions with inexperienced trainees and nonunion employees from its own nearby facilities, even though those facilities themselves were experiencing labor shortages.

On June 2, 2005, in reaction to this apparent illegal activity, the UMWA filed an unfair labor practice charge with the

National Labor Relations Board. The General Counsel for the Board investigated the matter and filed a complaint with the Board against Mammoth on August 18, 2006, alleging multiple violations of the National Labor Relations Act (NLRA). Over a six-week period, commencing on January 22, 2007, and ending on March 15, 2007, an administrative law judge (ALJ) conducted a 16-day evidentiary proceeding regarding this complaint. On November 21, 2007, in an exhaustively detailed opinion, the ALJ found that Mammoth had violated the NLRA.

The ALJ first held that Mammoth violated §§ 8(a)(1) and 8(a)(3) of the NLRA, 29 U.S.C. §§ 158(a)(1), (3) (2006), by discriminatorily refusing to hire union employees of Cannelton/Dunn in order to avoid an obligation to recognize and bargain with the union. The ALJ found abundant support for a prima facie case of discrimination, including not just circumstantial evidence but also overt anti-union statements made by Mammoth officials. In reaching its conclusion, the ALJ considered, analyzed, and then rejected each of Mammoth's proffered non-discriminatory reasons for its hiring decisions, noting that these justifications were "contradictory" and had "shift[ed]" over the course of litigation. Moreover, the ALJ also found that Mammoth, as a legal successor to the Cannelton/Dunn operation that had failed to recognize and bargain collectively with the predecessor union, had violated § 8(a)(5) of the NLRA. *Id.* § 158(a)(5).

Based on these findings, the ALJ's recommended order called for broad relief, including immediate employment offers and back pay for 85 listed discriminatees, forced recognition and bargaining with the union, rescission of any unilateral changes to employment terms and conditions, and remission of all wages and benefits that Mammoth would have paid absent discrimination. Both sides filed exceptions to the ALJ's proposed order; the matter remains pending before the Board.

### B.

In order to preserve the Board's remedial power during the pendency of administrative proceedings, the Board's regional director petitioned the federal district court for temporary injunctive relief under § 10(j) of the NLRA. Section 10(j) provides a means for the Board to seek an order from the court *temporarily* enjoining asserted unfair labor practices. *See* 29 U.S.C. § 160(j) (2006); *Kinney v. Pioneer Press*, 881 F.2d 485, 487–88 (7th Cir. 1989). In December 2007, due to anticipated reductions from its full five-member complement, which would take the Board below its quorum of three members, and pursuant to 29 U.S.C. § 153(d) (2006), the Board delegated its § 10(j) powers to its General Counsel. The General Counsel, in turn, recused himself (because of personal ties to the case) and delegated this power in the case at hand to the Deputy General Counsel.

Shortly after the General Counsel delegated this authority to him, the Deputy General Counsel authorized the regional director to petition the district court for temporary injunctive relief under § 10(j). Mammoth moved to dismiss the petition, arguing that the Board lacked authority to delegate its § 10(j) powers. In a written opinion, the district court denied this motion. *Muffley v. Massey Energy Co.*, 547 F. Supp. 2d 536 (S.D. W. Va. 2008).

The district court then held an evidentiary hearing on the merits of the Board's petition, at which the court heard testimony from a number of witnesses. During that hearing, Mammoth conceded that the Board had demonstrated "reasonable cause" to believe that Mammoth violated the NLRA. After consideration of both the evidence offered by the parties and their oral and written arguments, the district court issued a thorough and well-reasoned opinion. *Muffley v. Massey Energy Co.*, No. 2:08-cv-00073, 2008 WL 4103881 (S.D. W. Va. August 29, 2008). The court found that limited injunctive relief—ordering Mammoth to offer employment to the

alleged discriminatee employees—was "just and proper" under § 10(j) to preserve the effectiveness of any ultimate Board order. *Id.* at \*9. But the court refused to grant the other injunctive relief that the Board requested. Specifically, the court declined to order Mammoth to recognize and bargain with the union, post notices of the district court's order throughout its workplace, or rescind any unilaterally imposed employment conditions, finding those measures unnecessary to preserve the Board's remedial powers in this case. *Id.* at \*12. Both Mammoth and the Board noted timely appeals.

While those appeals were pending before us, Mammoth moved in this court for a stay of the district court's order that it offer employment to the alleged discriminatee employees. The order, Mammoth claimed, would result in irreparable harm to the company because it might have to displace some of its current employees to accommodate the hiring of discriminatees. Before we could act on Mammoth's motion, however, the company withdrew the motion, acknowledging that, after it offered positions to all of the discriminatees, it had been able to hire all who sought employment *without* laying off any employees. *See* Mammoth's Mot. to Withdraw Mot. For Stay of Inj. Pending Appeal at 2, No. 08-1973 (4th Cir. Oct. 15, 2008).

## II.

As a preliminary matter, Mammoth argues that neither this court nor the district court can consider this case because the Board improperly delegated the power to seek § 10(j) relief to its General Counsel.[1] The district court held, and we agree, that the NLRA expressly authorizes this delegation.

---

[1]Before the district court, Mammoth also challenged the additional delegation of § 10(j) authority from the General Counsel to the Deputy General Counsel. Mammoth seems to have abandoned this argument on appeal. In any event, like the district court, we find that delegation lawful under the Federal Vacancies Reform Act. *See* 5 U.S.C. § 3345(a)(1) (2006).

Congress vested the power to seek § 10(j) relief with the Board. *See* 29 U.S.C. § 160(j) (2006) ("The Board shall have power . . . to petition any United States district court . . . for appropriate temporary relief or restraining order."). However, when it created the office of the General Counsel, Congress also provided in § 3(d) of the NLRA that the General Counsel "shall have final authority, *on behalf of the Board*, in respect of the investigation of charges and issuance of complaints under [§ 10 of the NLRA] . . . *and shall have such other duties as the Board may prescribe*." *Id.* § 153(d) (emphasis added). As Mammoth acknowledges, every court that has addressed this issue has found that § 3(d) permits the Board to delegate to the General Counsel its power to seek § 10(j) relief. *See, e.g.*, *Kentov v. Point Blank Body Armor, Inc.*, 258 F. Supp. 2d 1325, 1329 (S.D. Fla. 2002); *Penello v. Int'l Union, UMWA*, 88 F. Supp. 935, 937 (D.D.C. 1950); *Evans v. Int'l Typographical Union*, 76 F. Supp. 881, 888–89 (S.D. Ind. 1948).

Nevertheless, Mammoth contends that § 3(d) only provides for delegation of certain "duties" and that the decision to seek § 10(j) relief constitutes a fundamental "power" that the Board cannot delegate. Mammoth attempts to distinguish the two terms, equating "duties" with prosecutorial functions and "power" with adjudicative functions, and then relies on the general rule that although the Board may delegate *prosecutorial* functions to the General Counsel, it may not assign away its core *adjudicative* functions. *See Flav-O-Rich, Inc. v. NLRB*, 531 F.2d 358, 363–64 (6th Cir. 1976); *KFC Nat'l Mgmt. Corp. v. NLRB*, 497 F.2d 298, 303, 306–07 (2d Cir. 1974).

The central question, then, is whether the ability to seek § 10(j) relief is prosecutorial or adjudicative in nature. This ability seems to us, as it has to all other courts, clearly prosecutorial: *seeking* § 10(j) relief from a district court adjudicates nothing. Whether the Board or the General Counsel petitions a district court for relief, the adjudicative function—

the ultimate decision to grant relief—lies with the district court. *See Kentov*, 258 F. Supp. 2d at 1328. Delegation of the prosecutorial decision to request relief does not interfere with the structure of the NLRA nor divest the Board of its adjudicative power. The Board may therefore lawfully delegate § 10(j) authority to the General Counsel pursuant to § 3(d) of the NLRA.[2]

## III.

Mammoth next poses essentially two arguments with respect to the merits of the district court's limited § 10(j) injunction. First, Mammoth insists that the district court committed reversible error in applying an improper standard in deciding whether to grant the § 10(j) injunction. Second, Mammoth contends that even if the district court's selection of a standard does not require reversal, the district court abused its discretion in granting the Board injunctive relief. We consider each argument in turn.

### A.

#### 1.

Section 10(j) provides that a district court shall award temporary injunctive relief "as it deems just and proper." 29

---

[2]In its attempt to avoid the plain meaning of § 3(d), Mammoth proffers two arguments. First, it contends, citing floor statements, that legislative history indicates that Congress intended the Board and the General Counsel to be independent decision makers. *See, e.g.*, 93 Cong. Rec. 6383 (1947). These statements do not support Mammoth's view that the Board cannot delegate its § 10(j) powers to the General Counsel and, even if they did, these fragments of legislative history could not undermine our duty to enforce the unambiguous language of § 3(d). Mammoth also argues that the delegation of § 10(j) powers to the General Counsel runs counter to the Board's established practice. This contention is simply inaccurate. Such delegations occurred—and courts approved them—soon after Congress established the General Counsel. *See Penello*, 88 F. Supp. at 937; *Evans*, 76 F. Supp. at 888–89.

U.S.C. § 160(j) (2006). The meaning of this simple language, which the Supreme Court has never directly addressed, has vexed the courts and spawned three competing standards for judging the propriety of § 10(j) relief.

Likening § 10(j) injunctions to relief pursuant to § 10(*l*) of the NLRA, many circuits have held that § 10(j) requires a district court to follow a two-step approach, determining whether (1) "reasonable cause" exists to believe a violation of the NLRA has occurred, and (2) injunctive relief is "just and proper." *See Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 234–36 (6th Cir. 2003); *Sharp v. WEBCO Indus., Inc.*, 225 F.3d 1130, 1133–34 (10th Cir. 2000); *Hirsch v. Dorsey Trailers, Inc.*, 147 F.3d 243, 247 (3d Cir. 1998); *Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367, 371 (11th Cir. 1992); *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1188–89 (5th Cir. 1975). Although these courts differ on precisely how strong the evidence must be to establish "reasonable cause," *see WEBCO Indus.*, 225 F.3d at 1134, they essentially agree that the "just and proper" inquiry turns on whether temporary injunctive relief is necessary to preserve the effectiveness of the remedy that the Board may ultimately order. *See, e.g.*, *Ahearn*, 351 F.3d at 239.

Other circuits have rejected this two-step standard. *See Sharp v. Parents in Cmty. Action, Inc.*, 172 F.3d 1034, 1038–39 (8th Cir. 1999); *Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 456–60 (9th Cir. 1994) (en banc); *Kinney*, 881 F.2d at 493. These courts note that § 10(j), unlike § 10(*l*), does not explicitly require a separate "reasonable cause" step and interpret § 10(j)'s "just and proper" clause to embody the established four-factor standard applicable to any preliminary injunction requested pursuant to Fed. R. Civ. P. 65(a). *See, e.g.*, *Kinney*, 881 F.2d at 489–90. Under this traditional equitable standard, a district court determines whether to grant § 10(j) relief by weighing the following four factors: (1) the possibility of irreparable injury to the moving party if relief is not granted; (2) the possible harm to the nonmoving party

if relief is granted; (3) the likelihood of the moving party's success on the merits; and (4) the public interest. *See Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 195–96 (4th Cir. 1977).

Finally, the First and Second Circuits have developed a hybrid standard. These courts incorporate the traditional four-part equitable standard into the "just and proper" analysis, yet retain a separate "reasonable cause" step. *See, e.g.*, *Hoffman v. Inn Credible Caterers, Ltd.*, 247 F.3d 360, 365, 368 (2d Cir. 2001); *Pye v. Sullivan Bros. Printers, Inc.*, 38 F.3d 58, 63 (1st Cir. 1994).

2.

This circuit has never directly addressed the issue that has divided our sister circuits. In *NLRB v. Aerovox Corp.*, 389 F.2d 475, 476 (4th Cir. 1967), on which the Board principally relies, we did look to out-of-circuit authority applying the two-step standard in § 10(j) cases, but *Aerovox* itself arose under *§ 10(e)* of the NLRB. Moreover, nothing in *Aerovox* indicates that the *standard* as to the grant of injunctive relief was at issue; rather, the parties simply disputed the *application* of that standard to the facts of the case. In *Johnston v. J.P. Stevens & Co.*, 341 F.2d 891, 892 (4th Cir. 1965), a brief per curiam opinion, we did review a § 10(j) injunction, but simply mentioned, without any analysis, the "just and proper" standard. Notably, the parties here place little reliance on *Johnston*, citing it only briefly and in passing.

Whatever the precedential force of *Aerovox* or *Johnston*, the Supreme Court's more recent analysis in *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982), provides compelling guidance as to the appropriate § 10(j) standard. In that case, the Supreme Court stated that, unless directed otherwise by Congress, courts should exercise their traditional equitable discretion. The Court explained that if Congress intends to

depart from this "established" rule—which of course it may do—it must do so in a clear manner:

> [W]e do not lightly assume that Congress has intended to depart from established principles. . . .
>
> ". . . Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied."

*Id.* at 313 (*quoting Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)) (citation omitted).

In light of *Romero-Barcelo*, we believe that, in determining if a § 10(j) injunction should issue, the traditional four-part equitable test should govern what relief is "just and proper." Therefore, district courts are to utilize the *Blackwelder* factors in conducting the "just and proper" analysis and need not undertake a separate "reasonable cause" inquiry to determine whether to issue a § 10(j) injunction.

In reaching this conclusion, we note that § 10(j) includes no explicit reference to "reasonable cause." Rather, the plain language of the statute requires only that the district court find injunctive relief "just and proper." *See* 29 U.S.C. § 160(j) (2006). Certainly, the phrase "just and proper" does not evince a "necessary and inescapable" congressional intent to depart from traditional equitable standards. *Romero-Barcelo*, 456 U.S. at 313. To the contrary, "'just and proper' is another way of saying 'appropriate' or 'equitable.'" *Miller*, 19 F.3d at 458. Thus no language in § 10(j) compels departure from the traditional four-part test for equitable relief; in such circumstances, *Romero-Barcelo* indicates that courts should apply that test. 456 U.S. at 320.

Those courts that have refused to follow the interpretative guidance set forth in *Romero-Barcelo*, and have read an addi-

tional "reasonable cause" requirement into § 10(j), do so only by analogizing to § 10(*l*), which *does* explicitly require "reasonable cause." 29 U.S.C. § 160(*l*) (2006). Not only does this ignore the fact that § 10(j) contains no such language, but it also overlooks important differences between § 10(j) and § 10(*l*) relief.

Section 10(*l*) is mandatory: upon a showing of reasonable cause that specific types of unfair practices have occurred, the General Counsel must seek injunctive relief in the district court. *Id.* In this context, once the Board discovers enough evidence to establish "reasonable cause," it is *required* to act. *See Kinney*, 881 F.2d at 489.

Section 10(j), in contrast, is discretionary, allowing the Board to seek injunctive relief only after the General Counsel has filed a complaint with the Board. 29 U.S.C. § 160(j) (2006). Because by that time the General Counsel will have conducted thorough investigation and made a considered judgment about the merits of the case, the district court need not duplicate those efforts to ensure that "reasonable cause" exists. *See Kinney*, 881 F.2d at 489–90.

Accordingly, district courts in this Circuit are to utilize the traditional four-factor equitable test in determining whether it is "just and proper" to grant or deny § 10(j) injunctions; no further "just and proper" analysis is necessary or appropriate. But, of course, district courts should apply this test in light of the underlying purpose of § 10(j): preserving the Board's remedial power pending the outcome of its administrative proceedings. *See Miller*, 19 F.3d at 459–60.

Here, the district court did not apply this precise standard; instead, it added to it the "reasonable cause" analysis that we now hold unnecessary. But Mammoth does not allege any harm from the district court's addition of a "reasonable cause" step, and we can see none. As other courts have recognized, whether a court makes a separate "reasonable cause" inquiry

is nearly always immaterial to the outcome. *See Kinney*, 881 F.2d at 493 ("[W]e did not find a[ny] case in which the presence or absence of 'reasonable cause' made a difference."); *Pye v. Excel Case Ready*, 238 F.3d 69, 72 n.5 (1st Cir. 2001). This is so because, under the traditional four-factor standard, the court must still determine the Board's likelihood of success on the merits, an inquiry that essentially parallels the "reasonable cause" step. *Kinney*, 881 F.2d at 491. Moreover, in this case, Mammoth expressly conceded that reasonable cause existed. The district court's recognition of that concession surely does not constitute reversible error.

Mammoth, however, does allege that reversible error occurred because the court failed to consider the balance of harms and other equitable factors, thus assertedly failing to follow the traditional four-factor equitable test. Some courts applying the two-step standard have focused the "just and proper" step almost entirely on whether an injunction is necessary to preserve the Board's remedial power. *See, e.g.*, *Hirsch*, 147 F.3d at 247. We agree with Mammoth that such an approach might well slight the countervailing harms to the nonmoving party and the public interest, which the traditional four-factor standard expressly requires courts to weigh.

But the district court here did not neglect those factors. On the contrary, the district court's analysis explicitly "incorporate[d] equitable principles into its 'just and proper' analysis," and properly "balanced the interests of the [Board] and alleged discriminatee miners, [Mammoth], and the public." *Muffley*, 2008 WL 4103881, at *7, *9. The district court thus made clear that, in its view, a limited injunction satisfied the traditional four-factor equitable test. We therefore must reject Mammoth's first argument.

## B.

Mammoth alternatively contends that, even if the district court committed no reversible error in its choice of legal stan-

dard, it nonetheless did so in awarding a limited injunctive relief. We review an order granting an injunction for an abuse of discretion, reviewing factual findings for clear error and legal conclusions de novo. *See E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004); *Ahearn*, 351 F.3d at 237.

Mammoth first asserts that the district court erred in finding that the Board had shown possible irreparable harm resulting from a refusal to grant any injunctive relief. In fact, abundant evidence before the district court demonstrated that, without some measure of preliminary relief, many of the victims of the alleged discrimination would either retire or move away in search of other employment. *Muffley*, 2008 WL 4103881, at *10. In such a situation, even a well-established union like the UMWA might well lose support over time, such that when the Board does issue its order, it might be impossible for the union to reconstitute. The passage of time thus posed a very real—and potentially irreparable—harm to the effectiveness of the Board's eventual order. Congress intended § 10(j) relief to prevent precisely such harms. *See Miller*, 19 F.3d at 455 & n.3. Mammoth's initial challenge to the district court's grant of limited § 10(j) relief therefore fails.

Mammoth next argues that the district court gave insufficient weight to the harm that an injunction could pose to it. Specifically, Mammoth contends that because the § 10(j) order forced it to offer jobs to the discriminatee employees, the company might have had to lay off some of its current employees. In applying the usual equitable standards, a court must, of course, balance the harms to the nonmoving party against the threat of irreparable harm to the party seeking an injunction. *See Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 284–85 (4th Cir. 2002). The district court did that here. *Muffley*, 2008 WL 4103881, at *9, *11. In particular, the court found this possible harm to Mammoth unlikely because record evidence indicated that, as late as March 2008, Mammoth had advertised for additional employees to fill positions

formerly held by the discriminatees. *Id.* at \*11. Indeed, Mammoth has now conceded that after it complied with the district court's order and offered employment to the discriminatees, it did not need to displace any of its other employees. Thus, Mammoth's second challenge also fails—the district court did not abuse its discretion in finding that the balance of harms favored the Board.

Finally, Mammoth argues that the delay between the allegedly unfair labor practices and the petition for § 10(j) relief renders a grant of any § 10(j) relief improper. Section 10(j) does not allow the Board to seek injunctive relief until the General Counsel files a formal complaint. 29 U.S.C. § 160(j) (2006). Here, the General Counsel filed the complaint in August 2006, but the Deputy General Counsel did not authorize the regional director to petition the district court for relief until January 2008, almost 18 months later. The Board justifies its delay by noting that the General Counsel waited until the ALJ issued his opinion, in order to settle an exceedingly complex and disputed factual record. The Board also maintains that we should not punish the discriminatee employees for a delay beyond their control. *See Hirsch*, 147 F.3d at 249.

Although these factors provide a measure of justification for the delay, the extent of the Board's delay in this case troubles us, as it did the district court. Clearly, excessive delay can undermine the propriety of § 10(j) relief. As time elapses, it becomes less likely that injunctive relief can undo harms that have occurred in the interim. *See WEBCO Indus.*, 225 F.3d at 1135–36. Nonetheless, delay is an unfortunate reality in any matter before the Board and not only because of the volume of its docket. Complicated labor disputes like this one require time to investigate and litigate. *See Pascarell v. Vibra Screw Inc.*, 904 F.2d 874, 881 (3d Cir. 1990); *Maram v. Universidad Interamericana de Puerto Rico, Inc.*, 722 F.2d 953, 960 (1st Cir. 1983). Moreover, Mammoth, the party complaining of the delay, in fact contributed to the delay in this case through its litigation tactics.

The unusual delay here surely counts as *a* factor that the district court should, and did, consider in determining whether it should grant § 10(j) relief.[3] However, the district court also properly weighed the delay against not only the court's well-supported finding that the balance of harms favored the Board but also the evidence of the Board's considerable likelihood of success on the merits and of the strong public policy interests favoring some injunctive relief. Given the substantial violations of the NLRA that the ALJ found—and Mammoth's concession that reasonable cause existed to believe that it violated the NLRA—the record indicates that the Board will very likely order permanent injunctive relief. The record also provides substantial evidence that Mammoth made overt efforts to block reasonable collective bargaining, the vehicle that Congress has determined best achieves "industrial peace." *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 38 (1987); *see also* 29 U.S.C. § 151 (2006).

Accordingly, after careful review of the record and in light of the district court's painstaking consideration of all the relevant factors, we conclude that, notwithstanding the delay, the district court acted within its discretion in granting limited § 10(j) relief.[4]

---

[3]Although Mammoth contends that the district court completely "ignor-[ed]" the Board's delay, an examination of the district court's opinion belies this contention. The district court devoted an entire section of its opinion to Mammoth's delay argument, expressly considering delay as "a factor" in determining whether an injunction should issue. *Muffley*, 2008 WL 4103881, at *13.

[4]Mammoth offers two other challenges to the district court's injunction; we reject both. First, Mammoth argues that the district court improperly took "judicial notice" of the ALJ's opinion. This contention has no merit, for the district court clearly explained that the ALJ's opinion constituted "at best . . . background information." *Muffley*, 2008 WL 4103881, at *5. Indeed, rather than relying on the ALJ findings, the district court heard live testimony from witnesses and solicited briefs from the parties. Second, Mammoth challenges the district court's order that the § 10(j) relief extend to all Mammoth properties and not just the Cannelton/Dunn prop-

IV.

Finally, we turn to the Board's cross-appeal. The Board contends that the district court erred in refusing to award more extensive injunctive relief. In particular, the Board asserts that the district court abused its discretion by denying the Board (1) an injunction ordering Mammoth immediately to recognize and bargain with the UMWA, and (2) an injunction rescinding any unilaterally imposed initial employment terms. The district court refused to grant this relief, finding it unnecessary to preserve the effectiveness of the Board's ultimate order. We can find no error in this holding.

Rather, the district court correctly recognized that § 10(j) relief is extraordinary and that such relief should be narrowly tailored. *See Arlook*, 952 F.2d at 374. For after all, § 10(j) only authorizes interim injunctive relief "reasonably necessary to preserve the ultimate remedial power of the Board and is not to be a substitute for the exercise of that power." *Schaub v. Detroit Newspaper Agency*, 154 F.3d 276, 279 (6th Cir. 1998) (quotation omitted). In this case, the limited relief granted by the reinstatement order completely accomplishes this purpose. That limited injunction provides an offer of jobs for the discriminatee miners to prevent them from moving away in search of other employment. It thereby preserves a critical mass of bargaining unit employees at Mammoth such that, if the Board approves the ALJ's proposed order, the union will be able to reassert its role as representative of those employees.

In contrast, the Board did not demonstrate that in this case preservation of its remedial powers justified an injunction

---

erty. *Id.* at *13 n.3. The district court did not abuse its discretion in so holding. The court made a factual finding that Mammoth moved miners among its properties. *Id.* Given this and the fact that Mammoth could easily close or scale back the mines at the former Cannelton/Dunn site, not extending the order in this fashion might have rendered it completely ineffective.

ordering interim bargaining or rescission of certain employ-ment terms. Of course, such interim relief may be necessary to preserve the Board's power in other cases with other facts, *see, e.g.*, *Asseo v. Centro Medico del Turabo, Inc.*, 900 F.2d 445, 454 (1st Cir. 1990), and the Board itself may eventually order such relief as part of its final order. But here, the Board did not show that the passage of time (some of which the Board itself had caused), threatened the effectiveness of a bar-gaining or rescission order. *Muffley*, 2008 WL 4103881, at *12. The district court therefore did not abuse its discretion in finding additional interim relief unnecessary. At this point, in light of the advanced stage of this litigation, the Board itself can best address the appropriateness of this relief in its review of the ALJ's decision.

## V.

In summary, we hold that the Board may lawfully delegate the power to seek § 10(j) injunctions to its General Counsel and that the usual four-factor equitable test applies to deter-mine if a grant of § 10(j) injunctive relief is "just and proper." We further hold that the district court did not abuse its discre-tion in awarding limited injunctive relief to the Board, nor in denying the Board further injunctive relief. We therefore affirm the judgment of the district court.

*AFFIRMED*