GREGORY, Chief Judge, dissenting:
In determining whether it is "just and proper" to grant or deny a § 10(j) injunction, district courts in this Circuit must apply the four Winter factors "in light of the underlying purpose of § 10(j): preserving the Board's remedial power pending the outcome of its administrative proceedings." Muffley ex rel. N.L.R.B. v. Spartan Mining Co. , 570 F.3d 534, 543 (4th Cir. 2009). In this case, the district court's analysis begins and ends with the second Winter factor: irreparable harm. Because the district court failed to heed our instruction in Muffley and analyze irreparable harm in the proper context-preserving the Board's remedial power-I respectfully dissent.
For § 10(j) injunctions, irreparable harm is inseparably linked to the Board's ability to effectively remedy an illegal labor practice. Congress made this point clear when it defined irreparable harm as the harm caused by illegal labor practices, which the Board may not be able to remedy:
Experience under the National Labor Relations Act has demonstrated that by reason of lengthy hearing and litigation enforcing its order, the Board has not been able in some instances to correct unfair labor practices until after substantial injury has been done. ... [I]t has sometimes been possible for persons violating the act to accomplish their unlawful objective before being placed under any legal restraint and thereby to make it impossible or not feasible to restore or preserve the status quo pending litigation .
S. Rep. No. 105, 80th Cong., 1st Sess. 27 (1947) (emphasis added). See also Boire v. Pilot Freight Carriers, Inc. , 515 F.2d 1185, 1188 (5th Cir. 1975) ("[I]t had become evident that normal NLRB machinery involving issuance of an unfair labor practice complaint, a hearing before a trial examiner, de novo review by the Board, and an enforcing order by a Court of Appeals was so time-consuming that guilty parties could violate the Act with impugnity [sic] during the years of pending litigation, thereby often rendering a final order ineffectual or futile."). In other words, when the nature of an illegal labor practice limits the Board's remedial powers, irreparable harm is more likely. See Frankl v. HTH Corp. , 650 F.3d 1334, 1362 (9th Cir. 2011) ("[I]rreparable injury is established if a likely unfair labor practice is shown along with a present or impending deleterious effect of the likely unfair labor practice that would likely not be cured by later relief. In making the latter determination, inferences from the nature of the particular unfair labor practice at issue remain available."). And when irreparable harm is more likely, injunctive relief becomes increasingly necessary to preserve the Board's power and prevent those who commit illegal labor practices from reaping the benefits of wrongful conduct. See id. ("In the context of the NLRA, permitting an alleged unfair labor practice to reach fruition and thereby render meaningless the Board's remedial authority is irreparable harm." (quotation marks, citations, and alterations omitted) ). Understanding this context-the nature of the Board's remedial powers (including its limitations)-is critical to how district courts must apply all the Winter factors, including irreparable harm. Indeed, we said so in Muffley . 570 F.3d at 543. See also N. L. R. B. v. Aerovox Corp. of Myrtle Beach, S. C. , 389 F.2d 475, 477 (4th Cir. 1967) ("Preservation and restoration of the status quo are then appropriate considerations in granting *444 temporary relief pending determination of the issues by the Board." (quoting Angle v. Sacks , 382 F.2d 655, 660 (10th Cir. 1967) ).
There are at least two situations in which the effectiveness of the Board's remedial powers is particularly limited, thus irreparable harm is more likely. First, it is well-established that the Board's remedial powers cannot overcome the passage of significant time. "As time passes, the benefits of unionization are lost and the spark to organize is extinguished. The deprivation to employees from the delay in bargaining and the diminution of union support is immeasurable." N.L.R.B. v. Electro-Voice, Inc. , 83 F.3d 1559, 1573 (7th Cir. 1996). Indeed, Congress explicitly noted as much in justifying the need for § 10(j) injunctions. See S. Rep. No. 105, 80th Cong., 1st Sess. 27 (1947) ("Time is usually of the essence [in labor disputes] ... [h]ence we have provided that the Board, acting in the public interest and not in vindication of purely private rights, may seek injunctive relief in the case of all types of unfair labor practices[.]"). Second, a new union, one that has not successfully negotiated its first contract, is especially vulnerable to illegal labor practices. See Ahearn v. Jackson Hosp. Corp. , 351 F.3d 226, 239 (6th Cir. 2003) (concluding that a union that was "quite new and had not even signed its first contract" was "highly susceptible to management misconduct"). Because illegal negotiating tactics are more likely to stifle a nascent union, the Board's remedial powers are at greater risk during this critical period. See, e.g. , Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. N. L. R. B. , 449 F.2d 1046, 1052 (D.C. Cir. 1971) ("In cases arising in district courts under § 10(j), decisions take account of the erosion of union strength that may result from an unjustified refusal to bargain.").
In this case, an infant union is attempting to negotiate its very first contract, and the Board's allegations of illegal bargaining span almost a year-both situations in which the Board's administrative remedies are limited and irreparable harm is more likely. However, the district court failed to consider irreparable harm in this context. First, the district court emphasized the breadth of the Board's remedial powers, but ignored Congress's specific conclusion that, notwithstanding those remedial powers, certain labor injuries are beyond the Board's ability to redress-and therefore require prospective relief under § 10(j). The district court characterized the Board's powers as "broad" and "expansive" and concluded that the NLRB will be able to adequately remedy a year's-worth of alleged bad faith bargaining. J.A. 574. But its analysis failed to acknowledge that "[t]he Board cannot fashion a retroactive remedy for the harm to industrial peace that occurs during the period that the employer refuses to bargain." Small v. Avanti Health Sys., LLC , 661 F.3d 1180, 1192 (9th Cir. 2011) ; see also Frankl , 650 F.3d at 1363 ("And the Board generally does not order retroactive relief, such as back pay or damages, to rank-and-file employees for the loss of economic benefits that might have been obtained had the employer bargained in good faith."); Electro-Voice, Inc. , 83 F.3d at 1573 ("The district court's conclusion turns a blind eye to the effect of the passage of time. As this case demonstrates, years may pass before the Board reaches the merits of a case. As time passes the likelihood of union formation diminishes, and the likelihood that the employees will be irreparably deprived of union representation increases."). "Indeed, the longer that the Union is kept out ..., the less likely it is to be able to organize and represent those employees effectively if and when the Board orders the [employer]
*445 to commence bargaining." Bloedorn v. Francisco Foods, Inc. , 276 F.3d 270, 299 (7th Cir. 2001) ; see also Frankl , 650 F.3d at 1363 ("[E]ven if the Board subsequently orders a bargaining remedy, the union is likely weakened in the interim, and it will be difficult to recreate the original status quo with the same relative position of the bargaining parties."). Second, rather than acknowledge this Union's inherent vulnerability to unfair labor practices, the district court presumed it to be resilient. The district court assumed that the Union's "assertive posture" will somehow shield it from irreparable harm caused by the alleged illegal bargaining. J.A. 568 The district court's assumption is unfounded and has long been forbidden by the Supreme Court. See Int'l Ass'n of Machinists, Tool & Die Makers Lodge No. 35, v. Nat'l Labor Relations Bd. , 311 U.S. 72, 82, 61 S.Ct. 83, 85 L.Ed. 50 (1940) ("It cannot be assumed that an unremedied refusal of an employer to bargain collectively with an appropriate labor organization has no effect on the development of collective bargaining. Nor is the conclusion unjustified that unless the effect of the unfair labor practices is completely dissipated, the employees might still be subject to improper restraints and not have the complete freedom of choice which the Act contemplates." (citations omitted) ). Third, the district court disregards Congress's instruction and decades of judicial experience when it held that the harm in the alleged bad-faith bargaining is "purely speculative." J.A. 568. The opposite is true. "[F]ailure to bargain in good faith[ ] has long been understood as likely causing an irreparable injury to union representation." Frankl , 650 F.3d at 1362 (9th Cir. 2011). At bottom, the district court fundamentally missed the point of a § 10(j) injunction because it ignored the kinds of violations the Board cannot remedy; therefore its irreparable-harm analysis is detached from the context in which unfair labor injunctions must be assessed.
The majority insulates the district court's errors and holds that there is a "fundamental tension" between recognizing the harm inherent in certain unfair labor practices "and the Supreme Court's recognition that '[a] preliminary injunction is an extraordinary remedy never awarded as of right .' " Majority op. at 13 (quoting Winter v. Nat. Res. Def. Council, Inc. , 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) ). But the tension is illusory. The majority seems to suggest that acknowledging the circumstances in which irreparable harm is more likely will compel district courts to grant § 10(j) injunctions whenever the Board demonstrates a likelihood of success on the merits of an unfair bargaining claim. But the majority's holding, similar to the district court's analysis, forgets that courts must balance the four equitable factors. To that end, "a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits. Rather, a court must also consider whether the movant has shown that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Benisek v. Lamone , --- U.S. ----, 138 S.Ct. 1942, 1943-44, 201 L.Ed.2d 398 (2018) (citations omitted). Even if a court finds that the Board will likely succeed on the merits and that the nature of the alleged illegal labor practice increases the likelihood of irreparable harm, the other two factors-the balance of equities and the public interest-can "tilt[ ] against [its] request for a preliminary injunction." Id . at 1944 ; see also Winter , 555 U.S. at 23, 129 S.Ct. 365 (holding that public interest outweighed plaintiffs' likelihood of success on the merits and irreparable harm). Therefore, the majority's *446 concern that recognizing inherent harm in certain illegal labor practices will somehow make § 10(j) injunctions commonplace is overblown and inconsistent with the precedent on which it relies.
At the center of this labor dispute are hardworking nurses, who have assembled in the form of a union in order to redress grievances. The NLRA and the NLRB protect their right to bargain for fair and humane work conditions. Congress recognized that the NLRB's lengthy administrative process sometimes insulates illegal labor practices because once workers' collective voices are extinguished by illegal labor practices, the NLRB cannot reverse time. Accordingly, Congress enacted § 10(j) to prevent illegal practices from reaching fruition and district courts must grant or deny a § 10(j) injunction in light of Congress's purpose. The district court subverted the underlying purpose of § 10(j) by failing to analyze irreparable harm in the proper context and allowing likely illegal employer conduct to go unaddressed. And the majority effectively pushes injunctive relief out of reach for the types of illegal labor practices Congress specifically enacted § 10(j) to remedy.
I respectfully dissent.